# CARONDELET CANAL AND NAVIGATION COMPANY *v.* STATE OF LOUISIANA.

## ERROR TO THE SUPREME COURT OF THE STATE OF LOUISIANA.

No. 78. Argued March 16, 17, 1914.—Decided April 20, 1914.

As the judgment of the state court disposed of, and ordered the delivery of the property sued for, and in so doing disposed of the Federal defense interposed, it has substantial finality on which to base the writ of error, notwithstanding a reservation as to some property not appurtenant and provision for an accounting as to certain disbursements.

If the further proceedings in the court below apply only to questions reserved, so that the decree can be immediately executed as to the property involved, and as to that it is final, the judgment is final in form as well as in substance, and a writ of error properly lies from this court.

The fact that the Supreme Court of the State did not refer to a statute claimed to have impaired the rights of plaintiff in error, does not prevent this court from considering that statute, and if it was an essential, although an unmentioned, element of the decision, it is a basis for the Federal question set up.

Bad motives need not be imputed to a legislature in order to render a statute unconstitutional under the contract clause; it is not the motive causing the enactment, but the effect thereof on contract rights, which determines the question of constitutionality.

The repeal of a law which constitutes a legislative contract is an impairment of its obligation.

The acts of 1857 and 1858 of the legislature of Louisiana did grant certain contract rights to the Carondelet Canal and Navigation Company which are within the protection of the contract clause of the Federal Constitution, and the act of 1906 repealing the act of 1858 impaired the contract obligation of the latter.

The natural and grammatical use of a relative pronoun is to put it, in close relation with its antecedent, and in this case so *held* as to the pronoun "it," notwithstanding its use rendered the sentence somewhat ambiguous.

The provision in the act of 1858 of Louisiana, granting rights to a corporation on certain conditions, that after fifty years "it may

revert to the State," *held* to relate to the company and not to one of the properties specified.

In construing a statute which at the time of its enactment was published in more than one language, the version in the other language is significant.

In this case, *held*, that as reversion of property to the State was contingent on compensation, the statute should be construed as making payment a condition precedent of the reversion, as it could not be intended to remit the owner to a mere claim against the State which could not be enforced as the sovereignty of the State would give immunity from suit.

129 Louisiana, 279, reversed.

THE facts, which involve the jurisdiction of this court to review judgments of the state courts and also the constitutionality under the contract clause of the Federal Constitution of a statute of Louisiana relating to the property of Carondelet Canal and Navigation Company and the right of the State to acquire its property, are stated in the opinion.

*Mr. Edgar H. Farrar*, with whom *Mr. Benjamin T. Waldo* and *Mr. W. C. Dufour* were on the brief, for plaintiff in error:

The judgment of the Supreme Court is final in form and in substance, as it decides the right to the property in contest, and directs it to be delivered up by the defendant to the State, the plaintiff in the action, and the plaintiff is entitled to have such decree carried immediately into effect. *Forgay* v. *Conrad*, 6 How. 201; *Thompson* v. *Dean*, 7 Wall. 342, 346; *French* v. *Shoemaker*, 12 Wall. 86, 98; *Bostwick* v. *Brinkerhoff*, 106 U. S. 3; *Grant* v. *Phœnix Co.*, 106 U. S. 429; *Winthrop Iron Co.* v. *Meeker*, 109 U. S. 180; *St. Louis Ry.* v. *Southern Ex. Co.*, 108 U. S. 24, 28; *M., K. & T. R. R.* v. *Dinsmore*, 108 U. S. 30; *Keystone Iron Co.* v. *Martin*, 132 U. S. 91; *Lewisburg Bank* v. *Scheffey*, 140 U. S. 452.

The Federal questions involved were set up in oral argu-

ment and in the briefs on the merits. They were set up again in the application for a rehearing. *C., B. & Q. R. R.* v. *Drainage Commission*, 200 U. S. 561.

The judgment of a state court, even if it be authorized by a statute, whereby private property is taken for the State, or under its direction, for public use, without compensation, is upon principle and authority wanting in the due process of law required by the Fourteenth Amendment. The same principle applies to a statute of a State. *Chi., B. &c. R. R.* v. *Chicago*, 166 U. S. 226; *Fayerweather* v. *Rich*, 195 U. S. 276, and *Union Transit Co.* v. *Kentucky*, 199 U. S. 202.

This court will determine for itself what the contract claimed to be violated was. *Douglas* v. *Kentucky*, 168 U. S. 502; *McGahey* v. *Virginia*, 135 U. S. 662; *McCullough* v. *Virginia*, 172 U. S. 110; *Vicksburg* v. *Waterworks Co.*, 202 U. S. 467.

This court will review the findings of fact by a state court where a conclusion of law as to a Federal right and the finding of fact are so intermingled as to make it necessary to analyze and dissect the facts for the purpose of passing on the Federal question. *Creswill* v. *Knights of Pythias*, 225 U. S. 261; *Wood* v. *Chesborough*, 228 U. S. 678.

The necessary corollary of these propositions is that when the claim is that claimant has been deprived of property without due process of law, this court will find for itself what the claimant's property rights were, and how he has been deprived of them.

The plaintiff in error had legislatively recognized rights upon the property adjudged to the State by the Supreme Court of Louisiana.

The State never had any proprietary interest in and to the improvements on the Canal, Basin and Bayou, and never claimed any. She could have no claim to anything but to the Canal, Bayou and Basin as they stood in 1805;

and the act of 1896, which the court has enforced, takes plaintiff in error's property in violation of the charter rights of plaintiff under the acts of 1857 and 1858. La. Civil Code, Art. 23; *Henrietta Mining Co.* v. *Gardiner,* 173 U. S. 123; *United States* v. *Tyner,* 11 Wall. 92.

The reversion provided for in § 4 of the act of 1858 was the same thing as was originally provided for in the repealed section of the act of 1857.

If what was to revert under the act of 1858 on due compensation was the same thing as what was to revert under the repealed section of the act of 1857, then the act of 1906, sued on by the State and enforced substantially by the Supreme Court of Louisiana, impaired the obligation of the contract between the State and the plaintiff in error, because that act made no provision for compensation to the plaintiff in error.

If what was to revert, on due compensation made, expressed by the word "it" in the act of 1858 meant only the railroad, which was never built, and § 4 of the act of 1858 repealed § 20 of the act of 1857, then the State had no right of reversion to, or any other right to, any of the property and improvements connected with the Basin, Canal and Bayou St. John and the roadways on the sides thereof, and the adjudging of all of this property to the State by the state court without compensation to the company, and executing the act of 1906, was a taking of the company's property without due process of law in violation of the Fourteenth Amendment.

Even if the tenure by which the company held the waterway sued for was a lease, the State, as lessor, could not take the property at the end of the lease and keep the improvements made by the lessee, without making compensation therefor. La. Civ. Code, Art. 2726; *Ross* v. *Zuntz,* 36 La. Ann. 888.

The State had no title to the Canal and Basin; they were the property of the United States, on which the de-

fendant's antecessor in title had been granted perpetual rights by the legislative council of the Territory of Orleans, with the implied consent of Congress, to which rights the company had succeeded by the legislative direction of the State of Louisiana, and the State had no right to take this property and its improvements and appurtenances from the company except under its contractual right of reversion under the act of 1858.

The grant of the territorial council to the Orleans Navigation Company was valid, and it would have been valid even if made by the State. *Monongahela Nav. Co.* v. *United States*, 148 U. S. 61.

Even the United States could not have taken the improvements made on the Basin, Canal and Bayou St. John by the grantee of a valid grant without compensation. See *Carondelet Canal &c.* v. *Tedesco*, 37 La. Ann. 100; *Carondelet Canal &c.* v. *Parker*, 29 La. Ann. 434; *City* v. *Carondelet Canal &c.*, 36 La. Ann. 396; *Orleans Nav. Co.* v. *City*, 1 Martin, (O. S.) 23; *Same* v. *Same*, 2 *Id.* 214; *State* v. *Orleans Nav. Co.*, 11 Martin (O. S.), 309; *S. C.*, 7 La. Ann. 679; *United States* v. *Tyner*, 11 Wall. 92.

*Mr. Ruffin G. Pleasant*, Attorney General of the State of Louisiana, with whom *Mr. Daniel Wendling* was on the brief, for defendant in error:

The judgment is not final. The case should also be dismissed because no Federal question is involved. *Haseltine* v. *Central Bank*, 183 U. S. 131; *Navigation Co.* v. *Oyster Com'n*, 226 U. S. 99; *Missouri &c. Ry.* v. *Olathe*, 222 U. S. 185; *Norfolk Turnpike Co.* v. *Virginia*, 225 U. S. 264; *Schlosser* v. *Hemphill*, 198 U. S. 175.

Plaintiff in error's sole contention is that the lower court did not give to the act of 1858 the interpretation placed thereon by it. This does not present a Federal question.

Act 161 of 1906, providing for the appointment of a

Board of Control to take over the canal, did not impair the contract in the act of 1858.

No specific claim is made in the answer that said act impairs contract obligation, and that act does not impair contract rights.

The State did not rely upon the act of 1906 in support of its demand, but upon the charter and amended charter of the Canal Company.

Section 9 of the act of 1906, creating a Board of Control, provides that the act shall take effect October 1, 1907, and this date was fixed on as the time when said Board should organize as such, and not when it should take over the canal property and improvements.

The Supreme Court held that the State should take over the canal, etc., from the date mentioned in the amended charter of 1858, March 10, 1908, and not the date mentioned in the act of 1906. *Beaupre* v. *Noyes*, 138 U. S. 397; *Bacon* v. *Texas*, 163 U. S. 207; *Cross Lake Club* v. *Louisiana*, 224 U. S. 632; *Central Land Co.* v. *Laidley*, 159 U. S. 110; *Chappell* v. *Bradshaw*, 128 U. S. 132; *Clark* v. *Pennsylvania*, 128 U. S. 397; *Commercial Bank* v. *Buckingham*, 5 How. 317; *Des Moines* v. *Railway Co.*, 214 U. S. 179; *Cons. Turnpike Co.* v. *Norfolk Ry.*, 228 U. S. 599; *De Saussere* v. *Gaillard*, 127 U. S. 222; *Deming* v. *Packing Co.*, 226 U. S. 102; *Fletcher* v. *Peck*, 6 Cr. 87; *Hamblin* v. *Land Co.*, 147 U. S. 531; *Kennebec &c. R. R.* v. *Portland &c. R. R.*, 14 Wall. 23; *Knox* v. *Exchange Bank*, 12 Wall. 379; *Lehigh Water Co.* v. *Easton*, 121 U. S. 388; *N. O. Water Works* v. *Am. Sugar Co.*, 125 U. S. 30; *Preston* v. *Chicago*, 226 U. S. 447; *Ross* v. *Oregon*, 227 U. S. 150; *Spies* v. *Illinois*, 123 U. S. 131; *St. Paul Co.* v. *St. Paul*, 181 U. S. 149; *Turner* v. *Wilkes Co.*, 173 U. S. 461; *Wood* v. *Chesborough*, 228 U. S. 672; *Wilson* v. *North Carolina*, 169 U. S. 586; *Y. & M. V. R. R.* v. *Adams*, 180 U. S. 41.

The judgment does not give effect to the act of 1906, but rests on entirely independent grounds.

The judgment is broad enough to sustain it without reference to alleged Federal question or giving effect to subsequent act. Cases *supra* and *Arkansas So. Ry.* v. *German Nat. Bank,* 207 U. S. 270; *Capital City Dairy* v. *Ohio,* 183 U. S. 238; *Chappell Chemical Co.* v. *Sulphur Mines,* 172 U. S. 471; *Chesapeake &c. Ry.* v. *McDonald,* 214 U. S. 193; *Columbia Water Co.* v. *Ry.,* 172 U. S. 475; *Delaware Co.* v. *Reynold,* 150 U. S. 361; *Fowler* v. *Lamson,* 164 U. S. 252; *Fisher* v. *New Orleans,* 218 U. S. 439; *Hammond* v. *Johnson,* 142 U. S. 73; *Iowa Central Ry.* v. *Iowa,* 160 U. S. 389; *Jenkins* v. *Lowenthal,* 110 U. S. 222; *Klinger* v. *Missouri,* 13 Wall. 257; *Long Island Water Co.* v. *Brooklyn,* 166 U. S. 685; *Miller* v. *Railroad Co.,* 168 U. S. 131; *Mo. Pac. R. R.* v. *Fitzgerald,* 160 U. S. 556; *Mobile &c. R. R.* v. *Mississippi,* 210 U. S. 187; *Murdock* v. *Mayor,* 20 Wall. 590; *Powder Co.* v. *Davis,* 151 U. S. 389; *Rutland Railroad* v. *Cent. Ver. R. R.,* 159 U. S. 630; *Snell* v. *Chicago,* 152 U. S. 191; *Simmerman* v. *Nebraska,* 116 U. S. 54; *Taylor* v. *Cass County,* 142 U. S. 288; *Wood Co.* v. *Skinner,* 139 U. S. 293.

Congressional grants of land to the Orleans Navigation Company do not involve a Federal question; there is no dispute as to the validity or construction thereof.

The ownership of the property is not a factor in the case, as it is agreed to surrender the same at the end of the corporate existence. *Chever* v. *Horner,* 142 U. S. 122; *Delamar Mining Co.* v. *Nesbit,* 177 U. S. 523; *Fla. Cent. R. R.* v. *Bell,* 175 U. S. 328, 329; *Gill* v. *Oliver,* 11 How. 529; *Gold Washing Co.* v. *Keyes,* 96 U. S. 199; *Hastings* v. *Jackson,* 112 U. S. 233; *McStay* v. *Friedman,* 92 U. S. 723; *Murray* v. *Mining Co.,* 45 Fed. Rep. 386; *Miller* v. *Swan,* 150 U. S. 132; *Mill* v. *Merrill,* 119 U. S. 581; *Maney* v. *Porter,* 4 How. 55; *Romie* v. *Cassanova,* 91 U. S. 379; *Theurkauf* v. *Ireland,* 27 Fed. Rep. 769.

There is no foundation for the claim of want of due process of law. *Bergman* v. *Backer,* 157 U. S. 655; *Central*

*Land Co.* v. *Laidley,* 159 U. S. 110; *Head* v. *Amoskeag Mfg. Co.,* 113 U. S. 26; *Londoner* v. *Denver,* 210 U. S. 379; *Morley* v. *Lake Shore &c. R. R.,* 146 U. S. 162; *Standard Oil Co.* v. *Missouri,* 224 U. S. 270; *Twining* v. *New Jersey,* 211 U. S. 110; *Walker* v. *Sauvinet,* 92 U. S. 90; *West* v. *Louisiana,* 194 U. S. 261.

The Bayou St. John has always been held to be a navigable stream.

The State could not barter and sell, and, hence, could not give away the Bayou.

The plaintiff in error was bound to surrender the canal and property on the conditions named in its charter, and these conditions are what the Supreme Court held them to be.

The state court was construing its own statutes, which interpretation is always followed by this court.

If the contract of plaintiff in error, as evidenced by the acts of 1857 and 1858, is ambiguous and doubtful, plaintiff can take nothing thereby, for ambiguous grants are strictly construed against the grantee. Nothing can be inferred against the State. *Barney* v. *Keokuk,* 94 U. S. 338; 2 Baudry-Lacantinerie, "Du Contrat de Louage," p. 1, No. 1395; *Blair* v. *Chicago,* 201 U. S. 471; *Carondelet Canal Co.* v. *Tedesco,* 37 La. Ann. 102; *Carondelet Canal Co.* v. *New Orleans,* 38 La. Ann. 309; *Carondelet Canal Co.* v. *New Orleans,* 44 La. Ann. 396; *Cleveland* v. *Cleveland Ry.,* 204 U. S. 116; *New Orleans* v. *Carondelet Canal Co.,* 36 La. Ann. 397; *Dubuque &c. R. R.* v. *Litchfield,* 23 How. 66; *Elmendorf* v. *Taylor,* 10 Wheat. 152; *Enfield* v. *Jordan,* 119 U. S. 680; *Ill. Cent. R. R.* v. *Chicago,* 176 U. S. 659; *Maxwell Land Grant Case,* 121 U. S. 325; *Missouri &c. R. R.* v. *McCann,* 174 U. S. 586; *Canal Co.* v. *New Orleans,* 12 La. Ann. 365; *Orleans Nav. Co.* v. *Mayor,* 1 Martin (O. S.) (La.) 269; *Same* v. *Same,* 2 Id. 10, 214; *Rowan* v. *Runnels,* 5 How. 139; *Ridings* v. *Johnson,* 128 U. S. 212; *Shivley* v. *Bowlby,* 152 U. S. 57; *Spears* v. *Flack,* 34 Mis-

souri, 101; *State v. Orleans Nav. Co.,* 11 Martin (O. S.) 107; *S. C.,* 7 La. Ann. 679; *Stein v. Bienville Water Co.,* 141 U. S. 80; *Tallman v. Coffin,* 4 N. Y. 134; *Williams v. Eggleston,* 170 U. S. 311.

MR. JUSTICE MCKENNA delivered the opinion of the court.

The State of Louisiana brought this suit in the Civil District Court of the Parish of Orleans, State of Louisiana, against the Carondelet Canal and Navigation Company of New Orleans (herein called the canal company) for the recovery from the company, through its liquidators, of the Carondelet Canal, Bayou St. John and Old Basin, a waterway used by vessels for the transportation of freight and merchandise, and for its improvements and appurtenant properties.

The suit was dismissed by the Civil District Court as premature. On appeal to the Supreme Court of the State that court reversed the judgment dismissing the suit and ordered that a judgment be entered against the canal company, in liquidation, ordering the delivery to the State of the canal and waterway in their entirety, as they stood on March 10, 1908, together with all the property and improvements appurtenant thereto, including the roadway or roadways upon the side or sides of the canal.

The claims of the State to a triangular strip of ground hereafter mentioned or to the proceeds thereof, or to any other property, movable or immovable, not appurtenant to the waterway and roadways, were reserved for further adjudication in the proceedings. And an accounting was ordered of the receipts and disbursements in the management of the property since March 10, 1908, and the case was remanded to the District Court "for further proceedings on all questions reserved as above stated, and that the right of the plaintiff to obtain judgment for such an

amount as may be found due upon defendant's accounting, and to take such further proceedings and obtain such further orders as may be required for the execution of this judgment, be reserved." 129 Louisiana, 279, 322.

We refer to the opinion of the Supreme Court for the history of the canal, which, while interesting, is quite long. There is no question of the source and origin of the rights of the canal company; no question of the right of the State to take possession of the canal and its appurtenant properties upon complying with the contract alleged to exist between the State and the company. There is a question as to the extent of the rights of the company under the contract and for what property the State must make compensation, and the factors in the solution of the question require quite an extended discussion.

We are met, however, at the outset by a motion to dismiss on the ground that the judgment is not final.

The judgment disposes of and orders the delivery of practically all of the property sued for: (1) the waterway in its entirety; (2) all the property and improvements appurtenant to it, including the roadway or roadways upon the sides of it. It reserves property not appurtenant and an accounting of certain disbursements. The reservation concerns only a small piece of ground upon which there was a dispute as to whether it was appurtenant to the canal, a question the court apparently could not determine as it was a question of fact. All else will be taken from the canal company and delivered to the State. That is, all was decreed that it was the purpose of the suit to have decreed and which not only constituted its success, but which involved and disposed of the Federal right asserted by the canal company. The judgment, therefore, has a substantial finality. Is it not as well in form?

Cases are cited which, the State contends, require a negative answer to the question. They are distinguishable from that at bar.

In *Haseltine* v. *Bank,* 183 U. S. 130, the action was against a national bank to recover under § 5198 of the Revised Statutes for usurious interest alleged to have been charged. There was judgment in favor of the plaintiff in the action. It was reversed by the Supreme Court of the State on the ground that he had neither paid nor tendered the principal sum, and the case was remanded for further proceedings. The case, therefore, was remanded for a new trial in its entirety. It was ruled that the face of the judgment is the test of its finality and that this court cannot be called on to inquire whether, when a cause is sent back, the defeated party might or might not make a better case.

This rule was again expressed in *Schlosser* v. *Hemphill,* 198 U. S. 173, in a case where a right to amend the pleadings existed and a new case could have been made.

In *M. & K. Interurban Company* v. *City of Olathe,* 222 U. S. 185, a demurrer was sustained to the plaintiff's pleadings in the trial court and the Supreme Court, but the latter court did not direct a dismissal of the suit but left it stand in the court below. We held that the judgment sought to be reviewed was not one which finally determined the cause and that we were without jurisdiction.

In *Louisiana Navigation Co.* v. *Oyster Commission of Louisiana,* 226 U. S. 99, we repeated the test of finality to be the face of the judgment and expressed the reason to be that this court cannot be called upon to review an action of the state court piece-meal. The language was appropriate to the condition presented by the case, for the pleading in the case was left open for amendment.

In the case at bar there is distinct and explicit finality and the further proceedings are directed to apply only to the "questions reserved." And, it is to be assumed, this was purposely done to give finality to the questions not reserved, so that the decree could be immediately executed

upon the property involved requiring it to be delivered into the possession and administration of the State. This disposition we can easily conceive, the court considered necessary to the rights which the State was adjudged to have and the remedy commensurate with them. The decree, therefore, had a definiteness which did not exist in the cited cases, the Federal rights asserted by the canal company were injuriously disposed of. The ground of dismissal of the writ of error based on the judgment is not, therefore, sustained.

There are other grounds urged, to-wit, that no Federal question is shown, and that besides the decision of the court below was rested on a non-Federal ground sufficient to sustain it. A consideration of this involves the issues in the case and their determination.

The suit involves, as we have said, the right to the canal and its appurtenant properties, and the controversy between the parties turns upon the construction of two acts of the legislature of the State passed, respectively, in 1857 and 1858. Those acts will be referred to hereafter with some particularity. By virtue of those acts the canal company derived its rights and its corporate existence. The petition of the State presents the following propositions: (1) The act of 1857 (act No. 160), gave the canal company a corporate existence of twenty-five years from October 17, 1857, with power in the State to take possession of the canal and appurtenant properties. If the State should not exercise such right at such time then the company was to have existence for a second term of twenty-five years, at which time the canal and its appurtenant properties were to be surrendered to the State without compensation to be paid to the company. (2) By the act of 1858 (Act No. 74) the charter existence of the company was extended to fifty years and at the expiration of such period the property was to be surrendered to the State without the necessity of compensation being made

therefor.   (3) In 1906 (Act No. 161), in order that the
State should be in a position to assume control and take
possession of the property, the legislature passed an act
creating a Board of Control of the canal, to be appointed
by the Governor.   This board was appointed and the
property demanded.   (4) The company refused to comply
with the demand on the ground that the State had not
complied with certain alleged contract obligations which
the canal company claimed under § 4 of the act of 1858
and which gave it greater rights to the property than did
the act of 1857, and until such obligations were performed
the company would refuse to deliver the property.   (5) If
such was the effect of the act of 1858 the act was void as
being in violation of the constitution of the State, espe-
cially of articles 108 and 109, which prohibited the grant-
ing of aid by the State to companies and corporations
formed for the purpose of making works of public improve-
ment.   And further, if the company have the right to
demand compensation, it has no right to claim against
the State the property and improvements connected with
or which belong to the Carondelet Canal, the Bayou St.
John and the Old Basin on Toulouse Street, the State
being sole owner of that part of the property.   (6) The
New Orleans Terminal Company, in a suit to expropriate
a triangular piece of ground upon which stood the office
building of the company, was condemned to pay $3,000,
which sum was deposited in bank by agreement to await
the determination of whether the State or the company
should be entitled thereto.   (7) The company has collected
tolls through its liquidators since the expiration of its
charter.

The State prayed an accounting of the revenues of the
property after the expiration of the charter of the com-
pany, and that all the property and improvements con-
nected with and appurtenant thereto, including the
$3,000, the proceeds of the triangular piece of ground

referred to above, be delivered to the Board of Control created by the act of 1906 to be administered through the board.

Exceptions were filed to the petition of the State, and having been overruled an answer was filed. We need give only its basic allegations. They present, after denying the allegations of the petition of the State, the following propositions: (1) The State had no interest in the canal except under the contract between the canal company and the State, constituted of the acts of 1857 and 1858. (2) In 1857 the legislature, after anticipating the inability of a company called the New Orleans Canal and Navigation Company to carry out the terms of the purchase of the property under an act passed in 1852 (Act No. 309, March 18, 1852), passed the act of 1857, and that under those acts the canal company became possessed of the property. By § 4 of the act of 1858 (hereafter set out) it was provided that the company should have corporate existence during fifty years from the date of the act, after which time it might revert to the State upon due compensation being made according to award by three commissioners. (3) If the act of 1906 can be construed to authorize the Board of Control to take possession of the property without compensating the company therefor, it violates the contract clause of the Constitution of the United States. (4) The State never claimed any right or property in or to the canal and the improvements respectively made thereon by the Orleans Navigation Company and its successors, and whatever rights the State has are derived solely from the contracts between it and the canal company as defined in the acts of 1857 and 1858. The State never spent a dollar on the canal, the basin or the bayou, but the canal company has spent thereon a sum exceeding $750,000.

The State, as we have said, made a motion to dismiss on two grounds, one of which we have decided; the other is

that no Federal question is presented by the record, the canal company failing to distinguish, it is contended, between a subsequent act of the legislature impairing the contract and the decision of the court construing it. The question then is whether the act of 1906, appointing the Board of Control and investing it with powers, was an act which impaired the obligation of the contract, and in the solution of the question we must assume that the act of 1858 constituted a contract between the State and the canal company. The negative of the question is urged by the Attorney General in an argument of strength in which he contends the court did not consider or give any effect to the act of 1906 but considered only the act of 1858 and decided that the canal company did not acquire the rights under it which the company contends for. In other words, decided that the act of 1858 gave no rights which the State did not already have and which it was entitled to possess upon the expiration of the charter of the canal company. There is, as we have said, strength in the contention, but, of course, the fact that the Supreme Court did not refer to the act of 1906 does not put it aside from consideration. If it was the assertion of legislative power against the contract of the company and a legislative provision against the obligation of the contract, and was an essential, although unmentioned, element of the decision under review, it is a basis for the Federal question set up. Nor need bad motives be imputed to the legislature. It is not the motive which caused the enactment of the law which is of account, but the effect of the enactment, impairing the rights resting in the contract. And this, we think, was the effect of the act of 1906. It was treated as an important factor in the State's petition in both the charging part and the prayer. The Board of Control had something else to do besides to wait. It was an agency of invasion and it was by its especial command that the Attorney General made demand upon the com-

pany.[1] And in this the board exercised the power given it; and to remove the impediments to the exercise of the power, "all laws and parts of laws in conflict with" the act of 1906 which conferred the power were repealed. The repeal of a law which constitutes a contract is an impair-

---

[1] "Messrs. A. J. Davidson, J. H. Elliott and Hans Widner, Liquidators of the Carondelet Canal and Navigation Co., of New Orleans, New Orleans, La.:

"Dear Sirs—In view of the fact that the time during which the Carondelet Canal and Navigation Company of New Orleans has had the right to enjoy the possession and control of the Carondelet Canal and Bayou St. John, together with the Old Basin, with all of the revenue derived therefrom, has expired, and that it becomes the duty of the State of Louisiana, through the Board of Control for the Bayou St. John and Carondelet Canal and Old Basin, to take possession of the said Carondelet Canal, Bayou St. John and Old Basin, together with all the property and improvements connected therewith, or in any wise thereto belonging or appertaining, in order that the same may be controlled, managed, and administered by said board, for the use and benefit of the State, and, in view of the further fact that, at a meeting of said Board of Control, held on the first day of October, 1908, a resolution was adopted requesting me, as Attorney General of the State, to take such action as, in my judgment, would be proper to 'have the State put into possession of the Bayou St. John, Carondelet Canal and Old Basin, and all its properties and rights,' I now hereby make formal demand upon you to deliver into the possession and control of the said Board of Control of the Bayou St. John and Carondelet Canal and Old Basin, the said Bayou St. John and Carondelet Canal and Old Basin, together with all the properties and improvements connected therewith or in any wise thereto belonging or appertaining. In default of your complying with this formal demand, within a reasonable delay, I now notify you that I will institute suit for the purpose of recovering, for the State, to be controlled, managed and operated by the Board of Control aforesaid, the said Carondelet Canal and Bayou St. John and Old Basin, together with all the properties and improvements connected therewith or thereto belonging or appertaining.

"Be pleased to let me hear from you at your earliest convenience, and oblige,

"Yours truly,
(Signed) "WALTER GUION,
"Attorney General."

ment of its obligation. "It may be laid down, as a general
principle, that, whenever a law is in its own nature a
contract, and absolute rights have vested under it, a re-
peal of that law cannot divest those rights, or annihilate or
impair the title so acquired." 2 Story on the Constitution,
§ 1391. The provision of the Constitution against the
impairment of the obligation of contracts was intended
"to prohibit every mode or device having such purpose.
The prohibition is universal. It attempted no enumera-
tion of the modes by which contracts might be impaired.
It would have been unwise to have made such enumera-
tion, since it might have been defective." Id., § 1386. The
precaution was necessary. The prohibition is directed
against the exertions of sovereignty which the citizens,
unless protected by the organic law, would be impotent
to resist, whether boldly declared in an explicit law or
disguised in an ambiguous form. This case is an il-
lustration. Here is a property sought to be taken from
the canal company, and there can be no doubt that the
Board of Control, through the affirmative and repealing
provisions of the act of 1906, was to be the instrument
and moving agency. The motion to dismiss must, there-
fore, be denied, and we are brought to the merits of the
controversy—Did the acts of 1857 and 1858 constitute
a contract?

In the consideration of that question we do not think
it is necessary to discuss with any particularity the con-
tributions, respectively, of the State and the canal com-
pany and its predecessors to the construction of the canal
and its appurtenant properties. The case exhibits from
the first conception and commencement of the enterprise
by Governor Carondelet through its successive develop-
ment and extension the interest the State had in its ac-
complishment and the difficulties which had to be over-
come, two corporations going down to insolvency in the
undertaking, the State being compelled to resume the

powers it had conferred and make provision for granting them to more efficient instruments. In these circumstances we find the impelling causes of the act of 1857.

A word or two of the act of 1852 becomes pertinent. It provided that in case of a judgment of forfeiture against the Orleans Navigation Company a liquidating commissioner should be appointed who should take possession of the entire property of the company, real and personal, movable and immovable, and, after advertisement, sell the same in block at public auction. The conditions of sale were that the purchasers should "organize themselves into a corporation under the laws of this State, for a term of twenty-five years, for the purpose of carrying out and effecting all the improvements detailed and described in the reports and plans known as Harrison's reports and plans, including the construction of a new basin at the junction of Canal Carondelet and Bayou St. John, of the depth and dimensions set forth in said reports," and to actually complete them within the term of three years from the date of the charter of the corporation. It was provided that at the end of the term of twenty-five years the State should have the option of granting a renewal of the right of receiving the tolls for a second term of twenty-five years or of purchasing for itself "the property and the improvements of the company" at the appraised value thereof, and provided further that if the said term of twenty-five years be granted, the whole property should revert to the State at the end of the second term, without any payment of compensation made to the company. Work and improvements were to be commenced within six months and completed within six years, otherwise the right, title and interest acquired, together with the improvements that might be made, should vest in and belong to the State. The purchasers organized themselves into a corporation called the New Orleans Canal and Navigation Company.

Then came the act of 1857. It organized the present canal company, making the capital stock of the company $500,000. The company was authorized to take possession of the canal for the purpose of completing the works of improvement undertaken and commenced by the New Orleans Canal and Navigation Company under the provisions of the act of 1852. The canal company was given authority to depart from the plan "of the improvement of said Canal and Bayou" designated as 'Harrison's plan,' so far as the plan proposes a basin at the junction of the said Canal with the Bayou, if the board of directors should determine that such works were not demanded by the interests, safety or convenience of commerce.

It was provided that in case of the New Orleans Canal & Navigation Company's failure to perform the obligations undertaken by it, suit should be instituted to forfeit its charter, franchises and privileges and property, including the interest in the Canal Carondelet and Bayou St. John and the works done and effected therein, which, after appraisement, should be sold and payment made therefor in the stock of the new corporation, the canal company. With expressions of detail, it was provided that the new company might take and have all and singular the rights, privileges, franchises, immunities, powers and authority which had been at any time granted to and possessed and exercised by the Orleans Navigation Company under §§ 9, 10, 11, 12 and 13 of the act of 1850 and those possessed and exercised under the acts of 1850 and 1852 by the New Orleans Canal & Navigation Company. The new company was to assume all of the debts and obligations imposed on the old one by the act of 1852, except in so far as the provisions of said act were modified or changed in and by the act of 1857.

The canal company was required to complete the works required by the act of 1852 within three years from and after the seventeenth of October, 1857, subject to the

modification provided, and in the case of failure the franchise, rights, privileges and immunities granted should cease and be forfeited to and become the property of the State.

The canal company was given an existence of twenty-five years from and after the seventeenth of October, 1857, "provided that the State of Louisiana shall have the right to take possession of said Canal Carondelet and Bayou St. John, and all the property and improvements connected therewith, at the expiration of the term above mentioned, should the Legislature determine so to do, paying to this corporation the value of said property, to be appraised by five competent persons, as experts, two to be appointed by this corporation and two by the Governor, and the four thus appointed shall appoint a fifth; said experts shall be required to take an oath to discharge their duty faithfully. In the event that the State shall not determine to take possession of said property, as herein provided, then this corporation shall be in existence for twenty-five years from and after the expiration of the term in this section mentioned aforesaid, and at the end of such second term of twenty-five years, the said property may still become absolutely the property of the State of Louisiana, and no compensation required to be made to this corporation." (§ 20, Act No. 160, March 16, 1857.)

The act of 1858 comes next to be considered. It gives the right to construct lay-outs, basins, and half moons, for steam and any other water craft on the Bayou St. John, the basin and canal and to extend them, provided public roads be constructed around them and be kept subject to the ordinance of the city of New Orleans.

The company was given (§ 2) the right to construct a railroad, with single or double track, on either side of the Basin, Canal and Bayou St. John from the head of the basin, on Toulouse Street, to the lake end, and transport freight and passengers for hire and employ steam loco-

motives within such limits of the city as the common council may prescribe.

After five years from the passage of the act, the city was prohibited from draining in the bayou except upon payment of indemnity. And the city is given the right to build bridges over the canal and bayou.

Section 4 is as follows: "That the said company shall enjoy corporate succession during fifty years from this date; after which time *it* [italics ours] may revert to the State, upon due compensation being made according to award, by three commissioners, one appointed by the Governor of the State, one by the company, and the third by any Court of Record of New Orleans." (Act No. 74, March 10, 1858.)

By subsequent section the company is given the right to tow vessels; exclusive power to carry out their works in conformity with such plan or plans as it may at any time adopt and deem best calculated to forward the interests of commerce; to impose fines for violation of its rules; to issue bonds and to secure them by hypothecating and mortgaging "all its property, privileges, and immunities whatever," the amount of bonds not to exceed $250,000; and the company shall be exempt from taxation.

The controversy centers in § 4 and turns upon the antecedent to the pronoun "it" in the sentence "after which time *it* may revert to the State."

The natural and grammatical use of a relative pronoun is to put it in close relation with its antecedent, its purpose being to connect the antecedent with a descriptive phrase. In the provision under discussion "it" stands in the place of something that is to revert to the State, and, following, therefore, the natural and grammatical use of "it," its antecedent would be the noun "company" (said company). The Supreme Court of the State, however, considered that there was ambiguity in the relation of "it" and rejected "company" as the antecedent and observed

that it could not relate to any of the things provided for in succeeding sections nor to the "lay outs, basins and half-moons" mentioned in § 1 and decided that the antecedent was the railroad authorized to be constructed by the canal company by § 2. The court, after elaborate argument, expressed the view that the company could not revert to the State, and, as it had no property in the canal and its appurtenances, the only thing which could revert to the State was the railroad. "Whether this be the true solution of the problem or not," the court said, p. 310, "we are unable to find anything else in the act of 1858 than the railroad to which the relative 'it,' as used in section 4, can in any way be made to relate." And it was further said that there being nothing else to which "it" could relate other than the railroad and that, "having never been built, can afford no basis for defendant's demand for compensation and for a continuance of its possession of public property" (p. 320).

We are unable to concur in the learned court's conclusion. We have already pointed out that the first companies organized went down successively in bankruptcy. Neither the rights given them nor the purpose for which they were given averted financial disaster. The same rights and property, in the main contingent upon the same conditions, were conferred upon the canal company, the record shows, by the act of 1857, but they offered no prospect of success and the company was about to abandon its charter, when the act of 1858 was passed. It was effective, and its effectiveness must have been due to the additive rights which it conferred and the security which it gave them. We have stated its provision and those of the acts which preceded it. Let us repeat them, for in them we shall find the answer to the question whether any property existed in the canal company which could revert to the State, under § 4 of the act of 1858, except the railroad. For the answer we need not go farther back than

1852. In the act of that year the rights and property of the Orleans Navigation Company were conveyed through its liquidators after proper legal proceedings to certain individuals who were to organize themselves into a corporation for the term of twenty-five years which was to undertake the construction of the work, with an option on the part of the State to grant a renewal of rights for another term of twenty-five years "or of purchasing for itself *the property and improvements of the company at the appraised value thereof.*" In case of the grant of a second term, at its end "*the whole property*" was to revert to the State "without any payment or compensation made to said company."

These provisions are a recognition of a property interest in the canal which would be acquired by the corporation that was to be organized. This is put beyond doubt by a subsequent provision. If the corporation did not complete the work in the time the act designated, it was provided that "*all right, title and interest acquired by the purchaser, under the provisions of this act, together with any improvements that may be made, shall vest in and belong to the State.*"

The corporation was organized, as we have said, and became the New Orleans Canal and Navigation Company. The latter company failing to perform its undertaking, the Carondelet Canal and Navigation Company, plaintiff in error, was, under the act of 1857, organized, and possession of the property was given to it for the purpose and with the rights, powers and privileges as provided in the act of 1857. There was a provision in that act, as we have seen, as in the act of 1852, for successive corporate terms of twenty-five years. At the end of the first term the State should "have the right to take possession of said Canal Carondelet and Bayou St. John, and all the property and improvements connected therewith, . . . should the legislature determine so to do," upon paying the value

thereof, to be appraised in the manner provided.  If the State did not elect to purchase the property as provided, the second term of twenty-five years began, at the end of which it was provided that the "said property may still become absolutely the property of the State of Louisiana, and no compensation required to be made" to the canal company.

These provisions were idle—barren of everything but mischief and misleading effect—if the contention now made is tenable that the canal company, and necessarily as well its predecessors in the work, could acquire no property because the Bayou St. John was navigable water and the improvements had become appurtenant to it. Under the comprehensiveness of the contention there were no "property and improvements" to appraise or purchase, although the act declared there were both; there was no property to revert to the State, although the act provided for it, and took the precaution of excluding the requirement of paying for it.  These circumstantial provisions cannot be misunderstood.  They were not a precaution against the assertion of unfounded rights; they were the recognition of rights to be purchased and paid for in one contingency, to revert to the State without "compensation made" in the other contingency.

There was something more then than a prospective railroad for "it" to relate to and we might consider the contention of the State disposed of without the necessity of further discussion.  The Supreme Court recognized that as "the act of 1858 contains no repealing clause, and the act of 1857 is in *pari materia*, the search for the vagrant antecedent [it was so considered by the court] may be prosecuted in the last mentioned statute" (p. 310).  The court, however, did not locate the antecedent there because of the view that the railroad was the only property that the canal company had which could revert to the State.  But, we have seen, there was property provided

for in the act of 1857 substantial enough to have value to be appraised and purchased, substantial enough therefore to revert to the State. Not, it may be, property to be considered the antecedent looked for but significantly determining it to be something else than the railroad which was but a subordinate instrument in the scheme and which might or might not be built.

The rights and property conveyed and provided for by the act of 1857 were then of substance and value and yet the enterprise halted. We need not conjecture the cause. It is manifest that the failures of the past warned against the conditions of the act of 1857. A large sum of money was necessary. It was conceived it might be as much as $500,000, and to encourage its investment the act of 1858 was passed. This being its purpose, whatever changes it made in the act of 1857 it must be construed as having been adopted to effect such purpose. A prominent fact in it was that it contemplated a greater expenditure than the capital of the company and authorized an issue of bonds of not exceeding $250,000. It is true that it was provided that the sum should be employed upon the improvement of the navigation of the canal and the building of the railroad; but, notwithstanding, the authorization of the bonds indicates the conception of the amount necessary for the undertaking.

The act of 1858 made other changes to which we have referred and it may be assumed that all of them were of some value to the State or to the company or to both. The Supreme Court assigned a special value to the power given to the company to adopt its own plans instead of being confined to the Harrison report and plans. The record, however, affords no basis of estimating the importance of this choice; besides by the act of 1857 the company had been authorized to depart from Harrison's plans in certain particulars, and what would have remained of them after exercises of the right we have no means of

knowing. But it was certainly not intended by the discretion conferred to give the company power to construct the works in a cheap and inefficient manner, and it is not intimated that the discretion was not wisely conferred or not wisely exercised.

We must look, therefore, for some other motive for the act of 1858, and we think, as said by Mr. Justice Provosty in his dissenting opinion, that it "will be sought for in vain, unless it is to be found in the purpose of prolonging the unconditional life of the company and the doing away with the clause for the reversion of its property without compensation." This conclusion is fortified by the structure of the act and the relation of its parts. We have seen that the natural and grammatical antecedent of "it" in § 4 is "said company," and that it was the intentional antecedent is clear from the French version of the statute, the practice of the State at that time being to publish statutes in French and English.

The use of *"elle"* in the French version is of strong significance. There is no neuter gender in the French language, every noun is masculine or feminine, and the pronoun which stands for it must agree with it in gender as in English, but in French there is more certain indication of the antecedent. The neuter *it* relative to a noun is *il* or *elle* and therefore the use of *elle* in the French version points unmistakably to an antecedent of the same gender—to *"cette compagnie,"* and not to *"un chemin de fer."* Thus, wholly aside from which text is controlling, the context of both versions removes all doubt as to the meaning of the laws.

It is true, in a sense, that the company could not revert, for as a legal entity it would expire; but what it represented and possessed could revert—the result of its investments and energies, the property it had acquired under legislative sanction and the property it had created under like sanction. The company stood for its attributes and property.

It may be that it did not own the canal, or the bayou or the old basin. Indeed, ownership of their soil was disclaimed at the bar. But, we repeat, there was valuable property which the statute contemplated could revert and could be compensated for. *Monongahela Navigation Co.* v. *United States,* 148 U. S. 312.

The Attorney General separates in his argument the canal, the bayou and the old basin from the other properties and urges that at least as to them the State is entitled to take possession. And he seems to concede that the act of 1858 contemplated payment to the canal company not only for the railroad but also for the 'lay-outs, basins and half-moons'—giving "it" an antecedent of greater scope than did the Supreme Court. To the contention, however, that a distinction may be made between the properties, it must be answered that neither the act of 1857 nor that of 1858 makes such a distinction. The language of the act of 1858 is comprehensive and provides that all which is represented by "it" "may revert to the State upon due compensation being made according to award." And the same answer must be made to the contention that the company only has a lease of the properties and that its relation to the State being that of lessee, it, therefore, "has no defense to the State's demand for possession of the property." Whatever the relation created, payment of compensation was a condition precedent of the reversion to the State. It certainly was not intended to remit the canal company to a claim against the State. How would it be enforced against the resistance of the State, the sovereignty of the State giving immunity from suit?

*Judgment is reversed and the case remanded for further proceedings not inconsistent with this opinion.*