(104 So. 65)

No. 26240.

### CARONDELET CANAL & NAVIGATION CO. v. McGOEY, State Tax Collector.

(March 30, 1925.)

*(Syllabus by Editorial Staff.)*

Taxation ⚖️184—Canal property operated by corporation under charter not taxable, as being state property.

Where, under Act No. 160 of 1857, and Act No. 74 of 1858, §§ 4 and 9, corporation was authorized to take possession of and operate state canal property which was declared exempt from taxation for 50 years, the state reserving right of reversion at such time, property *held* not taxable for the years 1918, 1919, and 1920, even after expiration of 50-year period, as it was still state property, notwithstanding right of retrocession was not enforced and was eventually abandoned by the state by failure to repurchase as provided by Const. 1921, art. 19, § 20.

Appeal from Civil District Court, Parish of Orleans; Percy Saint, Judge.

Suit by the Carondelet Canal & Navigation Company (in liquidation) against Peter J. McGoey, State Tax Collector for the City of New Orleans. Judgment for plaintiff, and defendant appeals. Affirmed.

Harry P. Sneed, of New Orleans, and A. V. Coco, Atty. Gen., for appellant.

Dart & Dart, Monroe & Lemann, Dufour, Goldberg & Kammer, and Henry Mooney, all of New Orleans, for appellee.

LAND, J. Defendant tax collector has appealed from a judgment rendered by the civil district court of the parish of Orleans, perpetuating an injunction applied for by plaintiff company, and issued to restrain said tax collector from collecting the taxes assessed by the state for the years 1918, 1919, and 1920 on the following described property, to wit:

"A strip of land one hundred feet wide, more or less, located in the Second municipal district of the City of New Orleans, and running through what is known as Carondelet Walk, from north Basin street to north Jefferson Davis Parkway, and improvements thereon, consisting of one navigable canal."

The petition was filed in this case September 9, 1921, and the right to the writ of injunction herein issued is based by plaintiff company upon the ground that said canal property is public property and is exempt from taxation under sections 4 and 9 of Act 74 of 1858, as construed by this court in Carondelet Canal & Navigation Co. v. City

of New Orleans, 44 La. Ann. 394, 10 So. 871, and by the Supreme Court of the United States in Carondelet Canal & Navigation Co. v. State of Louisiana, 233 U. S. 387, 34 S. Ct. 627, 58 L. Ed. 1001.

Plaintiff corporation was created in 1857 by Act 160, and acquired the right, power, and authority to enter upon and take possession and control of the Canal Carondelet and Bayou St. John for the purpose of completing works of improvements thereon.

The canal property at the time belonged to the state and was acquired by donation from Congress on April 18, 1814. The Legislature in 1858 passed additional legislation affecting the canal property, and provided in section 4 of Act 74 of that year:

"That said company (Carondelet Canal & Navigation Company of New Orleans) shall enjoy corporate succession during fifty years from this date; after which time it may revert to the state, upon due compensation being made according to the award, by three commissioners, one appointed by the Governor of the state, one by the company and a third by any court of record of New Orleans."

It was also provided in section 9 of said act:

"That said canal and railroad shall be exempt from taxation during the period of fifty years."

In the year 1884, the city of New Orleans assessed for taxes the stock and machinery of plaintiff company, and the defense was made by said company, and sustained by this court, that the property upon which the tax had been levied was exempt from taxation under section 9 of Act 74 of 1858. In disposing of this issue the court said:

"It cannot be with plausibility claimed that the exemption was to operate technically, exclusively as far as the canal and the railroad were concerned. *The canal was state property and of course as such, necessarily exempt.* The railroad which the company was authorized to build, did not then exist and has never been constructed. *The legislative intent was clearly to exonerate the property of the company, represented by its stock and the machinery used*

for the purpose of the contemplated improvement of the canal and bayou. It was tendered and accepted as an important inducement for the onerous undertaking in view, for the enhancement of the public good.

"Evidently such has been the construction placed upon it by both the state and the city, *as never heretofore has either one or the other claimed any tax from the company for the past twenty-five years.*" (Italics ours.)

City of New Orleans v. Carondelet Canal and Navigation Co., 36 La. Ann. 396.

In the year 1888 the city of New Orleans again attempted to assess for taxes for that year certain improvements on the canal property, consisting of "a house rented for a restaurant to a third person and other improvements used by the canal for the storage of their utensils."

In sustaining the exemption from taxation claimed by the canal company, the court said:

"In the case heretofore decided with reference to exempting this company, the court says: 'The legislative intent was clearly to exonerate the property of the company represented by its stock and the machinery used for the contemplated improvement of the canal and bayou.' City of New Orleans v. Carondelet Canal & Nav. Co., 36 Ann. 396.

"The machinery being exempt, the place on the banks of the stream selected to store it and other materials, to protect them from loss and decay, is also exempt. That buildings of some sort are required can not be doubted. *It is a constituent part of the canal necessarily incident thereto.* * * *

"The exemption and the right to resume possession being expressed in one act of the Legislature, we conclude that the legislative intent was to exempt the canal *and the property appurtenant to it and serving the purpose of the company in maintaining its navigation.*

"The sovereign authority having reserved the right of becoming the owner of this property on the forfeiture or at the expiration of the term of the charter, we construe the exemption with reference to that right." (Italics ours.)

The state did not part with its ownership of the canal property, either under Act 160 of 1857 or under Act 74 of 1858. The Carondelet Canal & Navigation Company acquired, under the provisions of these acts,

merely the possession and control of this property, and the right to make such improvements as might be deemed necessary for the navigation of the canal. These improvements have been declared by this court in the decisions cited above as "a constituent part of the canal necessarily incident thereto," and exempt from taxation. They constitute, therefore, an integral part of the canal as public property owned by the state, and did not lose their legal status as public property by the expiration in 1908 of the 50-year period of exemption of the canal from taxation.

The stipulation in section 4 of Act 74 of 1858, "after which time *it may revert* to the state, upon due compensation being made," was not a contract upon the part of the state to repurchase the original canal property from the Carondelet Canal & Navigation Company, for the simple reason that the state had not parted with its title to this property, when said canal company was created under the Acts of 1857 and 1858. Such stipulation, while having the full force and effect of a legal and binding contract, was entered into by the state merely through equitable considerations; the intention upon the part of the sovereign being to retake its property, after the payment of due compensation for the improvements placed upon it at the expense of the canal company.

The right of reversion reserved by the state under section 4 of Act 74 of 1858 was not, therefore the right of the sovereign to acquire the canal property by a new title, but rather the reservation of its right to assert its primordial title under the congressional grant of 1814, upon the expiration of the charter of the canal company.

Although this charter terminated in the year 1908, the canal property and improvements were assessed by the state for the first time in the years 1918, 1919, and 1920, as far as the record shows.

The right of retrocession existed in favor of the state during all of these years, but was not enforced. It was not until the year 1921 that the state decided finally to renounce this right, unless exercised "at the next special or regular session of the Legislature and not afterwards." Constitution 1921, § 20, art. 19.

As the Legislature, neither at its special session in 1921 nor at the regular session in 1922, passed the necessary act to carry out the provisions of section 20 of article 19 of the present Constitution to consummate the right of reversion of the state as to the canal property, this right was abandoned in the year 1922, and for the first time in the history of the Carondelet Canal it ceased to be public property and became the private property of plaintiff company by quitclaim title from the state.

We conclude, therefore, that the taxing of the canal property and its improvements for the years 1918, 1919, and 1920 was not warranted, as this property was exempt from taxation up to and including the year 1921.

Judgment affirmed.

O'NIELL, C. J., concurs in the result.