## JOHNSON v. UNITED STATES.
### No. 48520.

Court of Claims.
June 28, 1948.

Charles J. Margiotti, of Pittsburgh, Pa. for plaintiff.

Edgar T. Fell, of Washington, D. C., and H. G. Morison, Asst. Atty. Gen. (John R. Franklin, of Washington, D. C., on the brief), for defendant.

Before JONES, Chief Justice, and WHITAKER, MADDIN, LITTLETON and HOWELL, Judges.

WHITAKER, Judge.

This case is before us on demurrer.

Plaintiff, Albert Williams Johnson, alleges that he was appointed United States District Judge for the Middle District of Pennsylvania on May 21, 1925. He resigned on June 29, 1945. He has been paid nothing since his resignation for the reason later to be stated. He sues for the salary to which he says he is entitled under section 260 of the Judicial Code, section 375 of Title 28 U.S.C.A. This section provides: That "when any judge of any court of the United States, appointed to hold his office during good behavior, resigns his office after having held a commission or commissions as judge of any such court or courts at least ten years, continuously or otherwise and having attained the age of seventy years, he shall, during the residue of his natural life, receive the salary which is payable at the time of his resignation for the office that he held at the time of his resignation. * * *"

Defendant says that the amount to which plaintiff is entitled under this Act is either a pension or a gratuity. If a pension, defendant says we have no jurisdiction of a suit to recover it, since such suits are expressly excluded from among those over

which we are given jurisdiction by section 145 of the Judicial Code, section 250 of Title 28 U.S.C.A. This Act gives this court jurisdiction of "First. All claims (except for pensions) founded upon, * * * any law of Congress * * *." If the payments are gratuities, defendant says it is within the power of Congress to withhold a gratuity at any time and that by the Act of June 24, 1946, 60 Stat. 304, Congress did withhold payment of this gratuity to plaintiff.

■ We are of opinion that the amount due under this section is neither a pension nor a gratuity.

■ The Constitution of the United States in Article III provides that "judges, both of the Supreme and inferior Courts, shall hold their Offices during good Behavior, and shall, at stated times, receive for their Services, a Compensation which shall not be diminished during their Continuance in Office." When a person is appointed to the office of United States District Judge he becomes entitled to draw the salary of this office so long as he continues to hold it. He continues to hold it until he voluntarily relinquishes it or is ousted by impeachment or death.

■ Many judges of seventy years and older have maintained unimpaired their mental vigor and in their years beyond seventy have contributed much to the jurisprudence of the country, but it is common knowledge that some of them have continued to hold their offices for some time after the ravages of time had so far wasted the tissues of their minds and bodies that they were no longer capable of properly administering the duties of their offices. They held on partly due to an unwillingness to admit the toll time had taken, and partly due to a desire to hold on to their constitutional right to draw the salary of the office as long as they lived.

■ The situation was not good, and yet there was no way to force a judge to relinquish his office except through impeachment, and impeachment only lay when the judge had been guilty of bad behavior. Faced with this unhappy situation, Congress came to the conclusion that many superannuated judges might be induced to relinquish their offices if they could be assured for the balance of their lives of the salary attached to it. It is common knowledge that this was at least one of the reasons for the passage of the Act upon which section 260 of the Judicial Code is based. See, e. g., the discussion of the Act of April 10, 1869, upon which the pertinent part of section 260 of the Judicial Code is based, in the Congressional Globe, 41st Congress, 1st session, page 647, and appendix thereto, page 2.

Since the Act was passed partly as an inducement to bring about resignations, we have no doubt that a judge thereby induced to resign is entitled to demand the inducement offered. He has a right to demand it not as a pension or a gratuity, but as the consideration offered to induce him to give up his right to hold the office as long as he lives.

Certainly if a private corporation bound itself to an employee by a long-term contract, from which there was no practical way to escape, and this employee became disabled to efficiently discharge the duties of his position, and if the corporation offered to permit him to resign on full salary in order to put a more efficient man in his place, and the employee did resign, there can be no doubt that the corporation would be liable to him for his salary for the remainder of his term of employment, whether or not the employee after resignation did anything to earn it. The employee had waived a right in consideration of a promise and he undoubtedly would have the right to sue on that promise.

A United States District Judge who resigns waives his right to hold his office for the remainder of his life and good behavior, in consideration of the promise of his employer to continue to pay him for the remainder of his life the salary he was drawing when he resigned.

This rule would be applicable to any Federal employee or to any other employee to whom an employer was similarly bound. It is not alone applicable to a judge; it is applicable to any employee under a comparable contract.

This does not mean, of course, that it is not within the power of Congress to repeal section 260 of the Judicial Code, but so long

as it stands unrepealed, a judge can demand the benefit of it as of right. He has the right to demand it not as a bounty or gratuity, but as a sum promised in consideration of a right surrendered.

■■ Indeed, it is doubtful if Congress could take that right away from a judge, who had previously resigned under the above recited circumstances, by a repeal of the statute giving the right. Certainly a State cannot by the repeal of a statute relieve itself of a contractual obligation embodied in the statute repealed. Carondelet Canal & Navigation Co., v. Louisiana, 233 U.S. 362, 377, 34 S.Ct. 627, 58 L.Ed. 1001. While section 10 of Article I of the Constitution, forbidding the passage of a law impairing the obligation of a contract, is directed at the States and not at the National Government, it nevertheless states the general public policy on the matter of the impairment of the obligation of contracts by legislative action—as well of the national legislature as that of the States. Such action by any legislature is abhorrent to our idea of justice and contrary to the right sought to be safeguarded by section 10 of Article I of the Constitution.

By the 10th Amendment to the Constitution all rights are retained by the States or the people except those delegated to the Federal Government. Could it be said that it was intended to prohibit the States from impairing the obligation of a contract and at the same time to delegate to the National Government the power to do so, except in those fields where the power to do so is incidental to the exercise of a power specifically granted, as the power to establish a uniform bankruptcy system? See Louisville Joint Stock Land Bank v. Radford, 295 U.S. 555, 589, 55 S.Ct. 854, 79 L.Ed. 1593, 97 A.L.R. 1106; Mitchell v. Clark, 110 U.S. 633, 643, 4 S.Ct. 312, 28 L.Ed. 279.

While section 10 of Article I of the Constitution is directed to the States alone, we think it nevertheless states the policy of the founders of the Government on the question of impairing the obligation of contracts and that any Act of the national legislature that does impair the obligation of contracts is contrary to that policy and not within the powers delegated to the National Government, except in specific cases, such as bankruptcy.

The Supreme Court recently in Hurd et al. v. Hodge et al., 1948, 68 S.Ct. 847, held that the public policy declared by the 14th Amendment against the denial of the equal protection of the laws was applicable to action by the Federal courts of the District of Columbia in enforcing contracts found to be against the public policy declared in the 14th Amendment, as well as to State courts, although the 14th Amendment was directed at State action alone. No reason is perceived why the principle announced in this decision is not equally applicable here.

■ Moreover, in those fields where from the grant of power there is to be implied the power to impair the obligation of contracts, this power must nevertheless be exercised subject to the limitations of the 5th Amendment to the Constitution. Louisville Joint Stock Land Bank v. Radford, supra. This Amendment prohibits the taking of private property for public use without just compensation. A contractual right comes within its protection. Monongahela Navigation Co. v. United States, 148 U.S. 312, 13 S.Ct. 622, 37 L.Ed. 463. The right there taken by the National Government was a franchise granted by a State to a company for the erection of locks and dams. It was held it could not be taken without just compensation.

■ The right acquired by a judge who resigned after the passage of the Act sued on is no less a property right than the franchise granted to such company. Both, it would seem, come within the protection of the 5th Amendment. See also Omnia Commercial Co. v. United States, 261 U.S. 502, 43 S.Ct. 437, 67 L.Ed. 773.

It follows from this that the payments to which plaintiff is entitled under section 260 of the Judicial Code are not in the nature of a pension nor of a gratuity. They are payments he has a right to demand under the promise contained in the section, a promise given in consideration of his relinquishment of his office.

■ Moreover, it is to be doubted whether Congress in excepting from our

jurisdiction claims for pensions had in mind anything more than those pension claims of war veterans over which the Pension Bureau was given jurisdiction.

Unless plaintiff is barred by the circumstances under which his resignation was given, and by what followed his resignation, we are of opinion that he is entitled to recover.

Plaintiff on June 29, 1945, submitted his letter of resignation to the President. Fifteen days later, on July 14, 1945, he addressed to the "Committee on the Judiciary, House of Representatives, United States" a letter reciting that he had previously resigned, and saying, "I herewith now further renounce and relinquish any right, including financial benefits that I may have under the retirement provision of the Act of Congress, Judicial Code, Section 260, cited in Title 28 U.S.C.A. § 375, as amended."

At the time this letter was written it appears that proceedings preliminary to impeachment were still pending before the Judiciary Committee of the House of Representatives, notwithstanding plaintiff's prior resignation. Paragraph 11 of plaintiff's petition reads: That the Judiciary Committee had no power or authority by resolution of Congress to receive, act upon or dispose of said renunciation or to deprive the plaintiff of his vested right to his salary; its authority was limited to investigation and to recommend or not to recommend impeachment proceedings to the United States Senate. No impeachment was recommended and no trial was held by the United States Senate.

This is all the petition alleges relative to the circumstances under which the letter of resignation and the letter of renunciation were written, but we may take judicial knowledge of the contents of the report of the House Judiciary Committee to whom plaintiff's letter of renunciation was addressed. This report (H.R. 1639, 79th Congress, 2d Session) reads in part:

The Committee on the Judiciary, after a full discussion and consideration of the report of the subcommittee, has decided and recommends—

That the House concur in the findings of the subcommittee:

Your committee is of the opinion that the evidence presented in the foregoing cases (10 cases were listed and discussed) establishes conclusively that Judge Albert W. Johnson is guilty of such high crimes and misdemeanors as in the contemplation of the Constitution ordinarily require the interposition of the constitutional powers of impeachment of the House; that in the actual administration of justice between private individuals, corporate entities, and the Government and its citizens, he was guilty over a long number of years of such misconduct as to constitute a continuing impeachable offense; that such judicial misconduct was manifested during the exercise of his judicial authority, in the discharge of his judicial duties in his official judicial capacity.

* * * that for more than 15 years Judge Johnson used, and permitted his court to be used, as a medium in the formation and operation of an unconscionable, a despicable, and a degrading conspiracy against the administration of justice; that he did so knowingly, wickedly, and maliciously; that he notoriously engaged in the barter and sale of court offices, notably in the appointments of attorneys, trustees, receivers, and similar offices and appointments, usually in consideration of a share in the salaries, fees, or other compensation paid such appointees; and that such compensation and fees generally were fixed in proportion to the amount of the "take"; that his decisions, decrees, orders, and rulings commonly were sold for all "the traffic would bear"; that his judicial conduct generally was tainted with fraud and tended to lower regard for the judiciary and the courts in the public opinion and esteem.

Your committee regrets that in view of this opinion it is constrained to withhold a recommendation for the impeachment of Judge Johnson. Under the Constitution (art. I, 3, 7) judgment in impeachment "shall not extend further than to removal from office and disqualifications to hold and enjoy any office of honor, trust, or profit under the United States * * *."

Shortly after this investigation began Judge Johnson's resignation was tendered to, and accepted by, the President (July 3, 1945). Later, in writing, the judge waived all his rights and privileges under the retirement statutes and provisions for Federal judges. Thus Judge Johnson himself brought about the fulfillment of a part of the constitutional and statutory requirements; that is to say, removal from office and relinquishment of retirement privileges. Judge Johnson is now more than 70 years of age. He is hardly likely to seek any future office of honor, trust, or profit under the United States; and even if he should seek such office, this record undoubtedly would be sufficient to disqualify him. Your committee therefore is of the opinion that this issue is now so moot as not to justify a recommendation for impeachment, with the likelihood of resultant trial in the Senate at a time when that body is engaged in the consideration of so many issues vital to the welfare of the Nation.

Despite the fact that in the opinion of your committee this judicial misconduct justifies and requires the interposition of the power of impeachment of the House, for reasons already stated, your committee withholds a recommendation for impeachment. In order, however, to make certain that neither Judge Johnson nor his estate may receive any retirement compensation, your committee recommends the adoption of H.R. 5413, which provides that since Judge Johnson has renounced his rights under section 260 of the Judicial Code, as amended, no payment shall be made to him or to his estate.

Because he withdrew himself as a witness and signed a waiver of all his rights and privileges of retirement, Judge Johnson was not examined by the committee as to his conduct in the Williamsport Wire Rope receivership. (He voluntarily took the witness stand and offered evidence in his own behalf under the direction of his counsel and did, while being examined by the committee, withdraw himself.)

The allegations of the petition and the report of the Judiciary Committee of the House of Representatives, both that of the majority and that of the minority, show that impeachment proceedings were pending at the time the letter of resignation and the letter of renunciation were written, and also that his resignation and his letter of renunciation caused the Committee to decide not to recommend impeachment. The conclusion cannot be avoided that plaintiff offered his resignation and renounced all further rights to his office, including financial benefits, in order to induce the committee not to recommend impeachment, and, further, that his resignation and renunciation caused the committee to decide not to recommend impeachment. This being true, plaintiff is estopped in equity and good conscience to assert any claim to those things which he renounced in order to prevent impeachment. No court should lend its aid to recover benefits renounced under such circumstances. To do so would be to countenance the grossest bad faith. It would put the court's stamp of approval on trickery and deceit.

By his letters of resignation and renunciation plaintiff relinquished all the rights that could be taken away from him by impeachment, save only the right to hold office in the future. The committee's report recommending no impeachment is based on this renunciation and on the improbability that plaintiff at his advanced age would ever seek any other office of honor, trust or profit, or, if he did so, that he would be successful, in view of his alleged record. If plaintiff were allowed to repudiate his renunciation and to recover his salary, one of the prime considerations which induced the committee to make its recommendation would be swept away. What action did plaintiff think the committee was about to take when he renounced his right to salary? Plaintiff was afraid to take the risk; and so he renounced that which he now claims.

It is no answer to say the House of Representatives can still impeach him. It may be they can, but as a practical proposition we know the chances of any one's bringing this about are very slim. More than two years have elapsed since the Committee made its report. The case has grown stale. Plaintiff has been tried in the criminal courts on certain charges investigated by the Committee, and has been acquitted. He is now more than 72 years of age. His sins, if any, have faded in the distance as

time has rushed on. There is but a slim chance that at this late day the House would bother to impeach him.

Plaintiff presented his letter of renunciation in order to prevent impeachment at the time proceedings looking to this end were pending. This letter helped to accomplish his purpose of stopping those proceedings. He cannot be allowed to reap the benefit of this act and not pay the price offered.

Plaintiff, however, says the body to whom he wrote his letter of renunciation had no power to accept it and that he had revoked it before it was accepted by the Congress on June 24, 1946, 60 Stat. 304.

It is entirely immaterial whether or not the House Judiciary Committee had the power to accept it. The material fact is that the letter was written to induce that committee to take the desired action in a matter over which it did have jurisdiction, and that committee, because of the letter, acted in the way plaintiff sought. The letter having accomplished its purpose, plaintiff was then without power to revoke it. An effort to do so under the circumstances is the worst of bad faith. Independent of the Act of June 24, 1946, we think plaintiff is estopped to recover.

What, if anything, the Act of June 24, 1946, adds to the case, we do not decide.

Finally, plaintiff says that at the time his letter of renunciation was written he was mentally incapacitated. The Government admits that his allegation of mental incapacity is sufficient to vitiate his act, if his allegation is true. In view of this admission, we must overrule the demurrer, and refer the case to a commissioner for the purpose of taking proof on this question, and on such other questions as may appear to be relevant to plaintiff's right to recover. It is so ordered.

JONES, Chief Justice, and HOWELL and LITTLETON, Judges, concur.

MADDEN, Judge (concurring).

I agree with the court that the Government's demurrer should be overruled, but I do not agree with some of the reasons given by the court, nor with the proposed further procedure in the case. As to the Government's contention that the claim here in question is for a pension within the meaning of our jurisdictional act which does not give us jurisdiction of pension claims, I agree with the court that the claim is not for such a pension. As to the Government's contention that we lack jurisdiction because the claim is for a gratuity, I think we have jurisdiction of a claim for a so-called gratuity, if the claim is founded upon an act of Congress awarding the gratuity in question

I disagree with the court's view that this is a claim founded upon a contract. I see in the statute providing for the continued payment of salary to resigned federal judges no contract, but only a law. I have no doubt of the correctness of the court's explanation of how the statute came to be enacted. Every statute fixing a term of office and a salary for a public official has a reason, viz., that such a term and such a salary will induce a capable person to accept appointment to the office. But, I think, such a statute is not an offer to a contract, which entitles the person who accepts the office to insist that the statute shall be left unchanged until he has received what the statute, at the time he accepted the office, provided. I think that the only pay statutes which may not be changed to the detriment of the officeholder are statutes fixing the salaries of those federal judges, the reduction of whose salaries is forbidden by the Constitution. The Constitutional protection does not extend to persons who have been but are no longer such federal judges, they having resigned from the office. I do not suggest, of course, that a contract of the United States might not take the form of a statute. That has occurred, to our knowledge, in the Government's dealings with some Indian tribes. But a statute which is also a contract is an unusual piece of legislation, and I see no evidence whatever that the statute here in question was of that unusual kind.[1]

I disagree with the court as to the effect of the plaintiff's letter to the Committee on the Judiciary of the House of Representatives, renouncing his rights to the funds here sued for. If he had been a

---

[1] See Hilton v. Sullivan, 1948, 68 S.Ct. 1020.

sitting judge, or any other official whose salary was set by statute, any agreement on his part to accept less than the statutory salary would have been invalid. United States v. Andrews, 240 U.S. 90, 36 S.Ct. 349, 60 L.Ed. 541. I suppose that the same doctrine would apply to any person who was entitled under a statute, to a payment of money. If, for example, the administrative officer whose responsibility it was to award a pension to a former soldier, or to an aged person, should make an agreement with that person that he should receive less than the statutory amount, I think the agreement would be invalid. And so I think the plaintiff's renunciation of what he was entitled to under the statute was without effect. The court's opinion does not make it clear whether it thinks the effect of the renunciation was contractual, the consideration being the withholding of impeachment proceedings, or whether it had the effect of an estoppel which created an equitable defense to the plaintiff's present claim. I think it had no effect whatever, and I think that to allow a committee of one branch of Congress to bargain the plaintiff out of a right given him by a regularly enacted statute would be a contradiction of the court's own analysis of the plaintiff's rights under that statute as being contractual. If they were contractual, which I think they were not, how could a committee of the House of Representatives modify a contract which Congress as a whole had made?

It follows from what I have said that I think that the question of whether the plaintiff was of sound mind or not when he purported to renounce his statutory right is irrelevant, and I would not direct this court's commissioner to inquire into it.

The Government's ultimate reliance is on the act of June 24, 1946, 60 Stat. 304. Its text is as follows: "That after July 14, 1945, no payments shall be made under section 260 of the Judicial Code to Albert W. Johnson (or to his estate), formerly district judge of the District Court of the United States for the Middle District of Pennsylvania, who resigned as such judge on July 3, 1945, and who, on July 14, 1945, renounced and relinquished his rights under section 260 of the Judicial Code to receive the salary therein provided for judges who resign after having served at least ten years and having attained the age of seventy years."

When this act is read in context with section 6 of the act of February 25, 1919, ch. 29, 40 Stat. 1157, 28 U.S.C.A. § 375, the pertinent statutory law may be paraphrased as follows: When any judge, except Albert Williams Johnson, of any court of the United States, appointed to hold his office during good behavior, resigns his office after having held a commission or commissions as judge of any such court or courts at least ten years continuously, and having attained the age of seventy years, he shall, during the residue of his natural life, receive the salary which is payable at the time of his resignation for the office that he held at the time of his resignation. * * *

The question arises, why is Albert Williams Johnson singled out from all the other persons who answer the general description given in the statute? The answer is plain. He is being punished. And who tried him and found him deserving of punishment? The Committee on the Judiciary of the House of Representatives. The act of June 24, 1946, is a Bill of Pains and Penalties, which, according to the precedents, is a Bill of Attainder, as that expression is used in the Constitution. I think that the act of June 24, 1946, is unconstitutional and is, therefore, no bar to the plaintiff's action. United States v. Lovett, 328 U.S. 303, 66 S.Ct. 1073, 90 L. Ed. 1252; affirming Lovett v. United States, 66 F.Supp. 142, 104 Ct.Cl. 557.

The Constitutional power of Congress to try and punish offenses, other than the offense of contempt of Congress, is limited to impeachment of public officers. The Constitution provides for the procedure, which is, in effect, indictment by the House of Representatives and trial by the Senate, a two-thirds vote in the Senate being necessary for conviction. In this case Congress dispensed with the constitutionally authorized procedure, if it was applicable to a resigned judge, as to which I express no opinion, and punished the plaintiff by the enactment of a statute. I think the Constitution forbids it to do that.

The court's opinion quotes the report of the Committee on the Judiciary of the House of Representatives, which shows that the committee was convinced that the plaintiff was guilty of serious crimes. The court's opinion also states that the plaintiff was subsequently tried in a criminal proceeding for some of the offenses which had been investigated by the Committee on the Judiciary, and was acquitted. I think both these facts are wholly irrelevant to our decision of the plaintiff's case.

I think the Government's demurrer should be overruled, but I would limit the hearing of the case before the commissioner of this court to the facts which are relevant to the issues as I have stated them.