UNITED STATES of America, Appellant,

v.

677.50 ACRES OF LAND IN MARION COUNTY, KANSAS; Katherine E. Vogel, et al., and Unknown Owners; 864.-04 Acres of Land in Marion County, Kansas; Donald D. Hollar, et al., and Unknown Owners; 150.00 Acres of Land in Marion County, Kansas; L. C. Crowe, et al., and Unknown Owners (Clear Creek, Inc.), Appellees.

No. 95–68.

United States Court of Appeals Tenth Circuit.

Jan. 13, 1970.

See, also, D.C., 239 F.Supp. 318.

Jacques B. Gelin, Atty., Dept. of Justice (Glen E. Taylor, Acting Asst. Atty. Gen., Raymond N. Zagone, Atty., Dept. of Justice, Washington, D. C., Benjamin E. Franklin, U. S. Atty., and Patrick K. Monahan, Asst. U. S. Atty., Topeka, Kan., on the brief) for appellant.

William L. Oliver, Wichita, Kan. (Martin, Porter, Pringle, Schell & Fair, Wichita, Kan., on the brief) for appellees.

Before LEWIS and HILL, Circuit Judges, and LANGLEY, District Judge.

HILL, Circuit Judge.

This is an appeal by the United States from a judgment and order of the District Court of Kansas confirming a Rule 71A(h), F.R.Civ.P., 28 U.S.C.A., Commission's award and distribution order in favor of appellee Clear Creek, Inc. Two narrow questions form the basis of the appeal: (1) in the process of condemning land for the Marion Dam and Reservoir Project, was a compensable interest of Clear Creek, Inc., taken; and (2) did the district court err in submitting the issue of compensability of the alleged interest to a commission?

Appellee Clear Creek, Inc., is a pipeline company formed in 1960 to transport crude oil from leases in the Marion County area to gathering stations. Prior to 1960, Mobil Oil Company and, later, Magnolia Pipeline Company, purchased the oil and trucked it to their processing plants. When Mobil and Magnolia ceased their trucking operations, Clear Creek was formed to provide a market for the oil producers in the Marion County area. Pipelines from the leases to gathering stations were laid by the appellee and division order contracts were executed by all operators, working interest owners and royalty owners who would be served by the pipelines. The content of the division orders is unique, providing that the contract is irrevocable until 4.5 million barrels of oil are run through the line. The irrevocability clause was incorporated in the contracts to insure repayment of Clear Creek's obligation in financing the construction of the pipeline. At the time of the taking approximately 73% of the quota had been met, with appellee's experts testifying that now the full 4.5 million barrels would never be pumped.

Of the five oil-producing tracts of land in question, settlements on two of them had been reached when Clear Creek sought to intervene on the grounds that it had a compensable interest taken by the Government's proceedings. Pursuant to Rule 71A(h) a commission was constituted and directed by the district court to report on whether Clear Creek had a compensable interest taken by the condemnation action and, if so, to fix its value. The commission found that when the Project was completed, and waters were dammed up, Clear Creek would be unable to purchase, gather or transport oil from the area. It then held that appellee "had an interest in the land condemned which amounted to an equitable servitude" and that it was entitled to compensation for the loss of those rights under the Fifth Amendment, awarding it $22,219.92.

The district court, in overruling objections of the plaintiff-appellant to the report of the Commission, attempted to correct any procedural irregularities by setting aside the legal conclusion of the commission regarding compensability of the interest and then restated the identical conclusion as its own. As a matter of law the court concluded that "a right with respect to the property taken which is valuable is compensable even though it is not technically an interest or estate in land, and the right to compensation is to be determined by whether the condemnation has deprived the claimant of valuable right rather, than by whether his right can technically be called an 'estate' or 'interest' in the land." In this regard the district court erred and we reverse.

Basically, appellee argues that its contracts are property within the contemplation of the Fifth Amendment and, having been taken by the United States, just compensation is due them. The initial portion of the hypothesis is quite correct as illustrated in numerous cases,[1] however, the theorem breaks down when it presumes that a compensable interest has been *taken.*

■ The division order contracts were not "taken" by the condemnation action. Clear Creek, vis-a-vis the contracts, had neither an interest nor an estate in the condemned land; their contracts concerned only the oil after it was severed from the realty. Appellee could not compel production, sue for waste or do any of the things incident to ownership. Their contracts were merely frustrated and the fact that they were irrevocable for a period of time does not elevate their stature to an interest or estate in the condemned fees.

In Omnia Commercial Company v. United States, 261 U.S. 502, 43 S.Ct. 437, 67 L.Ed. 773 (1923), the Court was faced with an analogous situation. The plaintiff had contracted to purchase a large quantity of steel plate from a Pittsburgh company. Large profits stood to be made by plaintiff, but before delivery was made the United States requisitioned the company's entire production. Omnia sued, claiming that its property in the contract had been appropriated for public use. After discussing several cases, the Court stated: "The conclusion to be drawn * * * is, that for consequential loss or injury resulting from lawful governmental action, the law affords no remedy. * * * If, under any power, a contract or other property is *taken* for public use, the government is liable; but if injured or destroyed by lawful action, without a taking, the government is not liable." [at 510, 43 S.Ct. at 438]

Just as in Omnia, Clear Creek seems to argue that taking the contract property, i. e., the oil reserves, was a taking of the contracts. This argument confuses the contracts with their subject matter. Manifestly the United States did not "take" the contracts; it was not bound by the contractual provisions nor could it enforce them. Similarly, appellee can-

---

1. *E. g.,* Lynch v. United States, 292 U.S. 571, 54 S.Ct. 840, 78 L.Ed. 1434 (1934); Omnia Commercial Co. v. United States, 261 U.S. 502, 43 S.Ct. 437 (1923); Johnson v. United States, 79 F.Supp. 208, 111 Ct.Cl. 750 (1948).

not compel the Government to produce and pipe oil via the appellee's pipelines until the 4.5 million barrel quota is met; neither can the United States be compelled to pay for the unintended losses to Clear Creek. The division order contracts were not "taken," but ended.

The same reasoning was used to deny recovery in Mullen Benevolent Corporation v. United States, 290 U.S. 89, 54 S. Ct. 38, 78 L.Ed. 192 (1933) where the Government took city property subject to reassessments to pay outstanding bonds. The bondholder argued that the Government's action "as effectually destroyed the chose in action as if it had seized the instruments evidencing the right." [at 94, 54 S.Ct. at 40] Citing Omnia, the Court held that the landholder's property was not taken, but frustrated. In Stipe v. United States, 337 F.2d 818 (10th Cir. 1964), we held that although the taking of adjacent property substantially reduced the market value of Stipe's business and the property upon which it was located, the loss was "due to the destruction or frustration of his business, and not the taking of the property." Later, in J. A. Tobin Construction Company v. United States, 343 F.2d 422 (10th Cir. 1965), we denied recovery to a lessee who sought compensation for the taking of his business which was located on the lessor's condemned property. We said: "The decisive fact is that the Government did not take Tobin's business, it took only the land on which the business was situated * * *. It follows that whatever loss Tobin sustained due to the frustration or destruction of his business did not amount to a taking of his property and was, therefore, not compensable." The identical theory is also found in R. J. Widen Company v. United States, 357 F.2d 988, 174 Ct.Cl. 1020 (1966) and Klein v. United States, 375 F.2d 825, 179 Ct.Cl. 910 (1967). The facts in each of the aforementioned cases are so far identical to those in the instant suit that the rationale there applied is dispositive of Clear Creek's argument.

A further reason for denying appellee's claim is embodied in the unit rule. The basic tenor of the rule is that "[o]ne award as just compensation for the entire value of the land is made and it stands in place of the property appropriated as the equivalent thereof." Bogart v. United States, 169 F.2d 210, 213 (10th Cir. 1948). In the case at bar, the commission properly determined just compensation for all the tracts condemned but then added an additional amount for Clear Creek's interest. In so doing the very thing designed to be eliminated by the unit rule was successfully achieved. The government paid market value for the oil; that is, what the oil was worth at the well site. This is prima facie just compensation.

The appellee seeks to distinguish its situation by analogizing it to cases we find wholly inapplicable. Heavy reliance is placed upon the following statement in Adaman Mutual Water Company v. United States, 278 F.2d 842, 845 (9th Cir. 1960): "Stated more succinctly, the Government must pay for all tangible interests actually condemned and for intangible interests directly connected with the physical substance of the thing taken." This rule is a restatement of the law upon which we rely and does not diminish the effect of our conclusions nor does it aid appellee's cause.

In Adaman the court merely held that "under the Fifth Amendment a restrictive covenant imposing a duty which runs with the land taken constitutes a compensable interest" in that land. United States v. Smoot Sand & Gravel Corp., 248 F.2d 822 (4th Cir. 1957) held that a riparian landowner was entitled to just compensation for sand and gravel deposits lying in a tidal estuary, a right of ownership vested by Virginia law. The case of Monongahela Navigation Co. v. United States, 148 U.S. 312, 13 S.Ct. 622, 37 L.Ed. 463 (1893) is distinguishable on several grounds: (1) Mononga-

**1140**

hela had a vested franchise right to receive tolls for the use of its lock and dam; (2) tangible property was taken; and (3) the case was decided on equitable principles of estoppel. In United States v. Puget Sound Power & Light Co., 147 F.2d 953 (9th Cir. 1944) a franchise granting the right to erect and maintain electric light and power poles was held a compensable property right in condemned property. The interest there was deemed either an easement or a chattel real. The Second Circuit case of United States v. Brooklyn Union Gas Co., 168 F.2d 391 (2d Cir. 1948) simply stated that a public franchise is a compensable property interest. In Brooklyn Eastern District Terminal v. City of New York, 139 F.2d 1007, 152 A.L.R. 296 (2d Cir. 1944) the court concluded that the terminal's interest was more substantial than the ordinary railroad right of way (which was compensable) and was thereby a compensable interest in the condemned property. In Nicholson v. Weaver, 194 F.2d 804 (9th Cir. 1952) a lessee with an option to purchase was held to have a compensable interest in the property taken.

■ Each of these cases, relied upon by appellee, demonstrates the necessity of a nexus between the alleged interest and the property actually taken. Absent this indispensable link, the Government is under no obligation to make just compensation.

■ The final matter concerns the propriety of the district court's request that the commission draw a legal conclusion, seemingly outside the statutory scope of Rule 71A(h), F.R.Civ.P., 28 U. S.C.A. It is apparent from the cases dealing with this rule that the original referral of the legal question was error.[2] Furthermore, we think that the setting aside of the commission's determination and thereafter reinstating the identical findings of the commission as its own was an unsuccessful attempt to correct

the error. To expeditiously handle condemnation suits it is imperative that Rule 71A be strictly adhered to.

The judgment of the District Court is reversed and the case remanded for disposition consistent with this opinion.

---

2. *E. g.*, Scott Lumber Co. v. United States, 390 F.2d 388 (9th Cir. 1968); United States v. Atomic Fuel Co., 383 F.2d 1 (4th Cir. 1967); Chandler v. United States, 372 F.2d 276 (10th Cir. 1967).