Norman M. WOLCOTT, Kathy L. Price, and Phyllis M. Spero, Plaintiffs,

v.

UNITED STATES, Defendant.

No. 97–192C.

United States Court of Federal Claims.

April 27, 1999.

Gary Howard Simpson, Bethesda, MD, attorney of record, for plaintiffs.

Hillary A. Stern, Commercial Litigation Branch and David W. Cohen, Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., attorneys of record, for defendant.

## OPINION

HORN, Judge.

## FACTS

This is a suit for severance pay and lost employment benefits. The plaintiffs' complaint

seeks from the Defendant severance pay with interest in addition to costs and attorney's fees for the Smithsonian Institution Trust Fund's breach of the express and/or implied employment contract pursuant to the Severance Pay Act, 5 U.S.C. § 5595, the 1991 Smithsonian Staff Handbook for Trust Fund Personnel, and Letter No. 8, (SSH 1200, 1st ed.) authorizing severance pay for eligible employees.

The plaintiffs, Norman Wolcott, Kathy Price and Phyllis Spero, formerly worked at the Smithsonian Institution's (Smithsonian) National Museum of Natural History, in the Registry of Tumors in Lower Animals (Tumor Registry). Mr. Wolcott began employment with the Smithsonian on November 7, 1988, and was a computer specialist at the time of his separation. Ms. Price began employment on January 6, 1986, and was a biological science laboratory technician at the time of her separation. Ms. Spero began employment on August 11, 1969, and was a museum specialist in zoology at the time of her separation. All three plaintiffs ceased employment at the Smithsonian effective June 3, 1995.

The Tumor Registry where all three plaintiffs worked was funded by a grant to the Smithsonian from the National Institute of Health (NIH). On June 1, 1995, the Smithsonian entered into a contract with George Washington University (GWU) to move the operations of the Tumor Registry from the Smithsonian to GWU. The Smithsonian continued to administer the NIH grant which funded the Tumor Registry. GWU's role was to support the work of the Tumor Registry pursuant to its contract with the Smithsonian, which included the requirement to provide employees for the Tumor Registry. To this end, all three plaintiffs were offered employment by GWU. Ms. Price and Ms. Spero became GWU employees, and experienced no gap in work between the Smithsonian and GWU. At his request, Mr. Wolcott was hired as a consultant by GWU under a service contract, and similarly experienced no gap in work between the Smithsonian and GWU.

The parties agree that the plaintiffs were trust fund employees and not civil service employees at the Smithsonian (i.e., not "Title V" government employees as defined by 5 U.S.C. § 2105(a) (1994)), although the Smithsonian has both civil service and trust fund employees. The parties further agree that the three plaintiffs did not have "employment contracts" with the Smithsonian, but were "appointed" to their trust fund positions. Plaintiffs believe that they are entitled to severance pay, as provided in the Smithsonian Staff Handbook for Trust Fund Personnel. Plaintiffs also contend that, comparing the former Smithsonian positions with the follow-on GWU positions, their overall benefit packages were reduced, and they seek compensation for the lost benefits.

The Smithsonian, which is an independent trust instrumentality of the United States, issued a Smithsonian Staff Handbook for Trust Fund Personnel, which provides that trust funds "are monies administered by the Smithsonian Institution other than those made available as a result of an appropriation by the Congress of the United States directly to the Institution." Trust fund employees, such as the plaintiffs, are defined as

employees paid from trust funds and appointed under the provisions of trust fund personnel policies. (The Institution also has civil service employees who are paid from funds appropriated by the Congress directly to the Institution and who are subject to the provisions of the U.S. Civil Service personnel system.)

The Smithsonian civil service employees, therefore, are not covered by Smithsonian trust fund personnel policies.

Letter No. 8 to the Smithsonian Staff Handbook for Trust Fund Personnel, subtitled "Severance Pay," and dated February 21, 1989, addresses severance pay for trust fund personnel:

> 1. BACKGROUND. SSH 1200, Trust Fund Personnel, Chapter 550, authorizes severance pay for eligible employees who are involuntarily separated from the rolls of the Institution through no fault of their own. This letter reflects current policy and procedure, superseding Letter No. 7 dated August 2, 1985.
>
> 2. ELIGIBILITY REQUIREMENTS.
>
> a. These provisions apply only to Trust Fund employees who are involuntarily separated from Smithsonian positions due to staff reduction or transfer of function situations. (See Chapter 351 of this handbook.)
>
> b. Employees may be paid severance pay only if on the date of separation they have been employed by the Smithsonian for at least the 3 preceding years without a break in service of more than 3 days; and have held an indefinite appointment within the 3 years.
>
> c. Employees who refuse an offer of a Smithsonian position in the same commuting area and of comparable pay to that of the position from which separated are *not* eligible for severance pay.

(emphasis in original). Chapter 550 of the Smithsonian Staff Handbook for Trust Fund Personnel, titled "Pay," also provides at paragraph 14: "Severance pay is authorized for an employee holding an indefinite appointment who is separated because of a staff reduction."

The defendant has filed a motion to dismiss under Rule 12(b)(4) of the Rules of the United States Court of Federal Claims. The defendant argues that the complaint fails to state a claim upon which relief can be granted. In their response, the plaintiffs oppose the defendant's motion, arguing that they have severance pay contracts with the Smithsonian which should be resolved pursuant to the existing personnel handbook and provisions contained therein.

## DISCUSSION

The defendant has filed a motion to dismiss pursuant to RCFC 12(b)(4) for failure to state a claim upon which relief can be granted. When considering a motion to dismiss, the court may consider all relevant evidence in order to resolve any disputes as to the truth of the jurisdictional facts alleged in the complaint. *Reynolds v. Army & Air Force Exch. Serv.,* 846 F.2d 746, 747 (Fed.Cir.1988). The court is required to decide any disputed facts which are relevant to the issue of jurisdiction. *Id.*

The standard for weighing the evidence presented by the parties when evaluating a motion to dismiss has been articulated by the United States Supreme Court, as follows: "in passing on a motion to dismiss, whether on the ground of lack of jurisdiction over the subject matter or for failure to state a cause of action, the allegations of the complaint should be construed favorably to the pleader." *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *accord Hamlet v. United States,* 873 F.2d 1414, 1416 (Fed.Cir.1989); *see also Alaska v. United States,* 32 Fed.Cl. 689, 695 (1995), *appeal dismissed,* 86 F.3d 1178 (Fed.Cir.1996). In rendering a decision, the court must presume that the undisputed factual allegations included in the complaint by a plaintiff are true. *Miree v. DeKalb County,* 433 U.S. 25, 27 n. 2, 97 S.Ct. 2490, 53 L.Ed.2d 557 (1977); *Reynolds v. Army & Air Force Exch. Serv.,* 846 F.2d at 746; *Alaska v. United States,* 32 Fed.Cl. at 695.

The burden of establishing jurisdiction is on the plaintiff. *McNutt v. General Motors Acceptance Corp. of Indiana,* 298 U.S. 178, 189, 56 S.Ct. 780, 80 L.Ed. 1135 (1936); *Alaska v. United States,* 32 Fed.Cl. at 695; *Catellus Dev. Corp. v. United States,* 31 Fed.Cl. 399, 404 (1994). The court should not grant a motion to dismiss "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957) (footnote omitted). Nonetheless, "conclusory allegations unsupported by any factual assertions will not withstand a motion to dismiss." *Briscoe v. LaHue,* 663 F.2d 713,

723 (7th Cir.1981), *aff'd,* 460 U.S. 325, 103 S.Ct. 1108, 75 L.Ed.2d 96 (1983).

In order for this court to have jurisdiction over plaintiff's complaint, the Tucker Act, as amended, 28 U.S.C. § 1491 (1994 & Supp. 1996), requires that a substantive right, which is enforceable against the United States for money damages, must exist independent of 28 U.S.C. § 1491. The Tucker Act provides:

> The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.

28 U.S.C. § 1491(a)(1). The Tucker Act merely confers jurisdiction on the United States Court of Federal Claims; it does not create a substantive right that is enforceable against the United States for money damages. *United States v. Mitchell,* 445 U.S. 535, 538, 100 S.Ct. 1349, 63 L.Ed.2d 607, *reh'g denied,* 446 U.S. 992, 100 S.Ct. 2979, 64 L.Ed.2d 849 (1980); *United States v. Testan,* 424 U.S. 392, 398–99, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976); *United States v. Connolly,* 716 F.2d 882, 885 (Fed.Cir.1983) (en banc), *cert. denied,* 465 U.S. 1065, 104 S.Ct. 1414, 79 L.Ed.2d 740 (1984).

Moreover, a waiver of the traditional sovereign immunity "cannot be implied but must be unequivocally expressed." *United States v. King,* 395 U.S. 1, 4, 89 S.Ct. 1501, 23 L.Ed.2d 52 (1969) (citing *United States v. Sherwood,* 312 U.S. 584, 61 S.Ct. 767, 85 L.Ed. 1058 (1941)). The individual claimants, therefore, must look beyond the jurisdictional statute for a waiver of sovereign immunity. *United States v. Testan,* 424 U.S. at 398, 96 S.Ct. 948. "[I]n order for a claim against the United States founded on statute or regulation to be successful, the provisions relied upon must contain language which could fairly be interpreted as mandating recovery of compensation from the government." *Cummings v. United States,* 17 Cl.Ct. 475, 479 (1989), *aff'd,* 904 F.2d 45 (Fed.Cir.1990) (cita-

tions omitted); *see also United States v. Mitchell,* 463 U.S. 206, 216–17, 103 S.Ct. 2961, 77 L.Ed.2d 580 (1983) (citing *United States v. Testan,* 424 U.S. at 400, 96 S.Ct. 948 (quoting *Eastport Steamship Corp. v. United States,* 178 Ct.Cl. 599, 607, 372 F.2d 1002, 1009 (1967))); *Duncan v. United States,* 229 Ct.Cl. 120, 138, 667 F.2d 36, 47 (1981), *cert. denied,* 463 U.S. 1228, 103 S.Ct. 3569, 77 L.Ed.2d 1410 (1983).

Plaintiffs assert jurisdiction under the Tucker Act, 28 U.S.C. § 1491, and the Severance Pay Act, 5 U.S.C. § 5595 (1994 & Supp. III 1997). The complaint addresses jurisdiction as follows:

### III. *JURISDICTION*

5. Jurisdiction properly lies in this court pursuant to the Severance Pay Act, 5 U.S.C. § 5595 and 28 U.S.C. § 1491. The trust fund is an independent trust instrumentality of the United States, administered by a board of regents comprised of Officers of the United States and therefore is subject to jurisdiction of this court.

6. The relief requested by the plaintiffs based on their breach of contract claims exceeds $10,000 as required for jurisdiction pursuant to the Tucker Act, 28 U.S.C. § 1491.

7. Pursuant to the Tucker Act, 28 U.S.C. § 1491, the United States explicitly waives sovereign immunity for claims arising upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract.

■ Plaintiffs' reliance in their complaint on the Severance Pay Act, 5 U.S.C. § 5595, is misplaced. Plaintiffs do not further discuss the Severance Pay Act in their response to defendant's motion to dismiss. The Severance Pay Act provides that:

> (b) Under regulations prescribed by the President or such officer or agency as he may designate, an employee who—
>
> &ast; &ast; &ast; &ast; &ast; &ast;
>
> (2) is involuntarily separated from the service, not by removal for cause on charges of misconduct, delinquency, or inefficiency; is entitled to be paid sever-

ance pay in regular pay periods by the agency from which separated.

5 U.S.C. § 5595(b)(2). The "separated from the service" reference in the statute is to the civil service. *See* 5 U.S.C. § 2105(a)(1) (employee is defined as an individual "appointed in the civil service"). Although the Smithsonian employs civil service employees, the plaintiffs were specifically appointed as trust fund employees and not as civil service employees. *See Bisson v. OPM*, 908 F.2d 947, 948, 950 (Fed.Cir.1990) (a private roll employee of the Smithsonian, paid from private trust funds rather than from federal appropriated funds, was not appointed in the civil service). Thus the Severance Pay Act does not provide a statutory basis for severance pay for the plaintiffs Wolcott, Price and Spero, who were trust fund employees at the Smithsonian.[1]

█ The plaintiffs further allege breach of an express or implied contract, founded on the severance pay provisions of the Smithsonian's trust fund personnel handbook. In its motion to dismiss the plaintiffs' breach of employment contract assertion, the defendant argues that "plaintiffs' employment was pursuant to appointment, not contract, and there is no statute or regulation of an Executive Department mandating the payment of the money that plaintiffs seek." In support of its motion, defendant relies heavily on *Hamlet v. United States*, 63 F.3d 1097 (Fed. Cir.1995), *cert. denied*, 517 U.S. 1155, 116 S.Ct. 1542, 134 L.Ed.2d 646 (1996).

Louise Hamlet was a program assistant in the Charlotte County, Virginia office of the Agricultural Stabilization and Conservation Service (ASCS) until her removal. The ASCS is an entity of the United States Department of Agriculture, which provided basis for the complaint against the govern-

ment. *Id.* at 1100. Two of Ms. Hamlet's counts alleged that her removal breached her employment contract, and did not comply with the rules and regulations contained in the ASCS personnel manual. *Id.*

The United States Court of Appeals for the Federal Circuit determined that the Court of Federal Claims lacked jurisdiction to hear Ms. Hamlet's breach of contract claim:

"The Tucker Act, of course, is itself only a jurisdictional statute; it does not create any substantive right enforceable against the United States for money damages." *United States v. Testan*, 424 U.S. 392, 398, 96 S.Ct. 948, 953, 47 L.Ed.2d 114 (1976). In order to invoke jurisdiction under the Tucker Act, a plaintiff must point to a substantive right to money damages against the United States. *Id.*

\* \* \*

This court has stated that there is a "well-established principle that, absent specific legislation, federal employees derive the benefits and emoluments of their positions from appointment rather than from any contractual or quasi-contractual relationship with the government." *Chu v. United States*, 773 F.2d 1226, 1229 (Fed. Cir.1985). In earlier proceedings in this case, we noted that, under the Tucker Act, "if Hamlet's employment was by 'appointment,' a breach of contract action against the government would be precluded." *Hamlet I*, 873 F.2d at 1417 n. 5 (citing [*United States v.*] *Hopkins*, 427 U.S. [123,] at 128, 96 S.Ct. [2508,] at 2511–12 [49 L.Ed.2d 361 (1976) ]; *Army & Air Force Exch. Serv. v. Sheehan*, 456 U.S. 728, 738, 102 S.Ct. 2118, 2124, 72 L.Ed.2d 520 (1982)). In *Sheehan*, the Supreme Court

---

1. Defendant also argues that the Severance Pay Act, by its language, applies only to employees of "an Executive agency," and that the United States Court of Appeals for the District of Columbia Circuit has held that "the Smithsonian is not an establishment in the executive branch." 5 U.S.C. § 5595(a)(1)(A); *Dong v. Smithsonian Inst.*, 125 F.3d 877, 879 (D.C.Cir.1997), *cert. denied*, —— U.S. ——, 118 S.Ct. 2311, 141 L.Ed.2d 169 (1998); see also definition of agency in 5 U.S.C. § 5595(a)(1). Defendant's argument might be read to imply that no Smithsonian employees, including civil service employees of the Smithsonian who might otherwise be eligible, are authorized to receive severance pay under the Severance Pay Act. The issue has not been adequately addressed by the parties for this court to make a determination, and, in any case, the issue need not be reached in this case in light of the court's holding that the Severance Pay Act does not provide this court with a jurisdictional basis over the above-captioned plaintiffs' complaint.

examined the record and the relevant agency regulations and concluded that the respondent in that case was employed by appointment, rather than by contract, and, thus, the Tucker Act did not confer jurisdiction over the respondent's contract claim against the United States for money damages. *Sheehan,* 456 U.S. at 735–37, 102 S.Ct. at 2122–24.

*Hamlet v. United States,* 63 F.3d at 1101.

Plaintiffs in the above-captioned case observe that the Smithsonian, as an instrumentality of the United States, at least had the power to enter into a contract which would bind the United States, and cite *Porter v. United States,* 204 Ct.Cl. 355, 360, 496 F.2d 583 (1974), *cert. denied,* 420 U.S. 1004, 95 S.Ct. 1446, 43 L.Ed.2d 761 (1975) ("the court can have jurisdiction over this claim only if, as a matter of law, the Trust Territory government was an agency or instrumentality of the United States acting within the scope of its authority in entering into the disputed agreement and thereby binding defendant as a principal to it." (citations omitted)). Plaintiffs then argue that the severance pay provisions of the Smithsonian's personnel handbook were contractually binding, creating enforceable severance pay contracts, and citing numerous state court employment law cases in support of the proposition. Summarizing the point, plaintiffs contend:

> In this case the Smithsonian's Handbook's terms and conditions relating to severance pay are as specific as any lawyer could wish. It specifies what events must occur for the severance benefits to vest. It provides a means to calculate the benefits owed with particularity. It provides a contractual grievance process for the resolution of disputes. No discretion is required in terms of deciding how or when to make the severance pay award.

(citations omitted).

In attempting to obtain redress for her removal from employment, Louise Hamlet had similarly argued that the ASCS personnel manual constituted a binding employment contract, which the government had breached. *Hamlet v. United States,* 63 F.3d at

1101. The Federal Circuit in *Hamlet,* however, rejected the concept that a personnel manual could form the basis of a contract with personnel who are employed by appointment:

> Consequently, we hold that Hamlet's employment with the ASCS was by appointment and not by contract. Nothing in the record rebuts the presumption that a federal employee is employed by appointment and not by contract or quasi-contract. *See Chu,* 773 F.2d at 1229.[2] Thus, Hamlet's breach of contract count does not provide for a substantive right to money damages and cannot provide for jurisdiction under the Tucker Act.

*Id.* at 1102 (footnote omitted). The Smithsonian Staff Handbook clearly states that trust fund employees such as the plaintiffs "are employees paid from trust funds and appointed under the provisions of trust fund personnel policies." The plaintiffs were not in a contractual relationship with their former employer, the Smithsonian.

In fact, the plaintiffs agree that, "[a]s appointees they had no contractual or quasi-contractual relationship with the government as the defendant correctly argues." Plaintiffs argue, however, that once their employment with the Smithsonian was severed, the contract rights stemming from the personnel handbook arose:

> However once the Plaintiffs were terminated—that is to say that their "appointment" was extinguished—the only relationship they had or could have had with the government was contractual. Those contract rights did not and could not have come into being until after their appointment relationship with the Smithsonian no longer existed.

Plaintiffs, while giving short shrift to *Hamlet v. United States,* rely on *Johnson v. United States,* 111 Ct.Cl. 750, 79 F.Supp. 208 (1948), for the proposition that former government appointees can have contract claims. In that case, Judge Johnson resigned from the federal bench in the face of impending impeachment proceedings in the House of Representatives, and subsequently filed suit

---

**2.** *Chu v. United States,* 773 F.2d 1226, 1229 (Fed. Cir.1985).

in the United States Court of Claims to receive his salary after resignation, based on a statute which he alleged so provided. *Id.* at 752, 79 F.Supp. 208. The statute in question, 28 U.S.C. § 375 (1940),[3] provided that a United States judge who has served on the bench for at least 10 years, and who has attained 70 years of age, shall receive the salary being paid at the time of his resignation, for the remainder of his life. *Id.* at 752, 79 F.Supp. 208.

The court in *Johnson* held that:

A United States District Judge who resigns waives his right to hold his office for the remainder of his life and good behavior, in consideration of the promise of his employer to continue to pay him for the remainder of his life the salary he was drawing when he resigned.

This rule would be applicable to any Federal employee or to any other employee to whom an employer was similarly bound. It is not alone applicable to a judge; it is applicable to any employee under a comparable contract.

\* \* \*

It follows from this that the payments to which plaintiff is entitled under section 260 of the Judicial Code are not in the nature of a pension nor of a gratuity. They are payments he has a right to demand under the promise contained in the section, a promise given in consideration of his relinquishment of his office.

*Id.* at 754–56, 79 F.Supp. 208. Although the court employed the language of contracts ("promise given in consideration"), it is clear that the court was merely parroting the conditions of the authorizing statute, 28 U.S.C. § 375, which pertained to judges on the bench for at least 10 years, who had at attained 70 years of age, and who tendered their resignation.[4]

In the instant case, the only statute proffered by the plaintiffs is the Severance Pay Act, which was discussed earlier and found to be inapplicable. Thus, in this court's view, *Johnson* is distinguishable from the instant case. Plaintiffs also call the court's attention to *Hatter v. United States*, 31 Fed.Cl. 436 (1994), *rev'd on other grounds*, 64 F.3d 647 (Fed.Cir.1995), *aff'd by an equally divided court, United States v. Hatter*, 519 U.S. 801, 117 S.Ct. 39, 136 L.Ed.2d 3 (1996). The trial court in *Hatter*, however, also distinguished *Johnson*, and concluded that: "At best for plaintiffs, *Johnson* holds that judges who resign from office in reliance on future retirement payments may have a contract remedy. . . . Plaintiffs have cited no controlling authority indicating a possible contract claim. In our view, no such claim exists." *Id.* at 447 (citations omitted). In contrast, the analysis of the Federal Circuit in *Hamlet* controls the instant facts. Louise Hamlet brought her claim, like the plaintiffs in this case, after separation from the agency in question. Ms. Hamlet, like the plaintiffs in this case, relied in part on the agency personnel manual. Ms. Hamlet's complaint was based on her removal, which could by definition only arise

---

**3.** The statutory provision is currently codified at 28 U.S.C. § 371(c) (1994).

**4.** In a concurring opinion in *Johnson,* Judge Madden wrote:

I disagree with the court's view that this is a claim founded upon a contract. I see in the statute providing for the continued payment of salary to resigned federal judges no contract, but only a law. I have no doubt of the correctness of the court's explanation of how the statute came to be enacted. Every statute fixing a term of office and a salary for a public official has a reason, viz, that such a term and such a salary will induce a capable person to accept appointment to the office. But, I think, such a statute is not an offer to a contract, which entitles the person who accepts the office to insist that the statute shall be left unchanged until he has received what the statute,

at the time he accepted the office, provided. I think that the only pay statutes which may not be changed to the detriment of the officeholder are statutes fixing the salaries of those federal judges, the reduction of whose salaries is forbidden by the Constitution. The Constitutional protection does not extend to persons who have been but are no longer such federal judges, they having resigned from the office. I do not suggest, of course, that a contract of the United States might not take the form of a statute. That has occurred, to our knowledge, in the Government's dealings with some Indian tribes. But a statute which is also a contract is an unusual piece of legislation, and I see no evidence whatever that the statute here in question was of that unusual kind.

*Id.* at 761–62, 79 F.Supp. 208 (footnote omitted).

after her separation from the ASCS. The complaint of the plaintiffs in this case prays for severance pay, which similarly can only arise after separation from the agency. The Federal Circuit in *Hamlet* declined to breathe life into the breach of contract theory upon noting that Louise Hamlet's appointment had expired with her removal, and neither will this court. Plaintiffs' contract for severance pay theory relies on the nature of plaintiffs' former employment, and thus, any entitlement to severance pay should be governed by the federal rules on employment law described in *Hamlet*.

 Although the plaintiffs rely on the Smithsonian's trust fund personnel handbook, they do so only in the context of breach of contract theory, which has been addressed and rejected above. Plaintiffs do not argue that the same personnel manual constitutes, in the alternative, an enforceable agency regulation, thereby providing this court with jurisdiction under the Tucker Act and a basis for denying the motion to dismiss. In this regard, the court briefly observes, however, that a reading of the analysis on this issue in *Hamlet* also would appear to foreclose application of a theory based on the personnel handbook as an enforceable regulation under the facts of the instant case. *See Hamlet v. United States*, 63 F.3d at 1102–07. The test a plaintiff would have to meet is as follows:

> In light of the foregoing, we conclude that, regardless of whether a provision of an agency's personnel manual or handbook was published or promulgated under the standards set out in the APA, such provision is a regulation entitled to the force and effect of law if (1) the promulgating agency was vested with the authority to create such a regulation; (2) the promulgating agency conformed to all procedural requirements, if any, in promulgating the regulation; (3) the promulgating agency intended the provision to establish a binding rule; and (4) the provision does not contravene a statute. In determining whether a provision was intended to be binding, the court should consider (a) whether the language of the provision is mandatory or advisory; (b) whether the provision is "substantive" or "interpretive";

> (c) the context in which the provision was promulgated; and (d) any other extrinsic evidence of intent.

*Id.* at 1105.

In *Hamlet*, the proffered personnel manual met many of the above criteria, but ultimately foundered, because the backpay provision in the personnel manual contravened a congressional statute, the Back Pay Act, 5 U.S.C. § 5596 (1994), and was, therefore, unenforceable. Ms. Hamlet was not a civil service employee and, therefore, was ineligible for backpay under the Back Pay Act. The Federal Circuit would not permit a regulation to give to Ms. Hamlet what Congress had determined by law not to give her. Similarly, as noted earlier, plaintiffs are ineligible for severance pay under the Severance Pay Act, 5 U.S.C. § 5595; thus, a provision in a personnel handbook contravening the congressional intent to forbid severance pay to this class of Smithsonian employees would appear to be an unenforceable regulation. *See Hamlet v. United States*, 63 F.3d at 1106.

Furthermore, the Tucker Act provides that the Court of Federal Claims shall have jurisdiction to render judgment on any claim against the United States based upon "any regulation of an executive department." 28 U.S.C. § 1491. As noted earlier, the defendant argues that the United States Court of Appeals for the District of Columbia Circuit has held that "the Smithsonian is not an establishment in the executive branch," and, therefore, arguably would be incapable of issuing an enforceable regulation of the sort plaintiffs would require to prevail in the instant case. See *Dong v. Smithsonian Inst.*, 125 F.3d at 879. This is the first prong of the test outlined above in *Hamlet*, "(1) the promulgating agency was vested with the authority to create such a regulation. . . ." *Hamlet v. United States*, 63 F.3d at 1105. The issue of whether the Smithsonian is an executive branch agency for purposes of issuing regulations which will confer Tucker Act jurisdiction has not been addressed by the parties, inasmuch as the personnel handbook as an enforceable regulation issue was not raised by the plaintiffs.

## CONCLUSION

For the foregoing reasons, the court grants the defendant's motion to dismiss. Each party to bear their own costs.[5]

**IT IS SO ORDERED.**

---

5. The court shares some of the frustration expressed by the plaintiffs in the following passage from their response to the defendant's motion to dismiss:

> The Smithsonian's purpose in distributing its Handbook to its employees must have been to provide them with enforceable contract rights to severance pay. The converse conclusion would be that the Smithsonian promulgated materials with no intention of providing the benefits stated therein; this would constitute a fraud upon its workforce. There must be a presumption in law against the federal government intending to defraud its citizens. At the

very least an attempt by the government to avoid honoring a specific written commitment, such as those contained in the Smithsonian Handbook is unseemly and a federal court should not make the avoidance of such undertakings simple.

Although the plaintiffs' choice of words in the above passage are somewhat heated, the court is disturbed by the existence of the severance pay provisions, and perhaps other benefit provisions, in the Smithsonian's personnel handbook, which purport to apply to "Trust Fund Personnel," such as the plaintiffs, and might be relied on by other Smithsonian trust fund employees.